2011 UT 47

**STATE of Utah, Plaintiff and Appellee,**

v.

**Curtis Michael ALLGIER, Defendant and Appellant,**

**The Salt Lake Tribune, Deseret News, and The Utah Headliners Chapter of the Society of Professional Journalists, Intervenors and Appellees.**

**No. 20090261.**

Supreme Court of Utah.

Aug. 9, 2011.

---

**31.** *Id.* § 78B–6–112(3) (emphasis added).

**32.** *Id.* § 78B–6–105(3) (emphasis added).

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Herschel P. Bullen, Salt Lake City, for defendant.

Jeffrey J. Hunt, David C. Reymann, Austin J. Riter, Salt Lake City, for intervenors.

Associate Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In this interlocutory appeal, we are asked to determine whether the district court erred in granting a motion to unseal a letter sent by a nonparty to the district court that concerned Appellant, Curtis Michael Allgier, and several criminal charges pending against him. To resolve this question, we must address two issues. First, we must determine whether the district court erred in concluding that there is a presumptive right of public access to the letter under the Utah Code of Judicial Administration (UCJA). Second, if we decide that the letter is entitled to a presumptive right of public access, we must decide whether the district court erred in denying Mr. Allgier's motion to seal the letter based on his failure to overcome that presumptive right.

¶ 2 We first hold that the district court correctly determined that the letter at issue in this case is entitled to a presumptive right of public access under the UCJA. Second, we hold that the district court correctly concluded that Mr. Allgier failed to overcome that presumptive right of public access. We

therefore affirm the district court's decision to unseal the letter.

## BACKGROUND

¶ 3 In 2007, during a routine transport from the Utah State Prison to a University of Utah hospital, Mr. Allgier allegedly took a gun from a corrections officer, shot and killed the officer, and escaped from the custody of the Utah Department of Correction. As a result of this alleged conduct, Mr. Allgier was charged with aggravated murder, disarming a peace officer, aggravated escape, aggravated robbery, and three counts of aggravated attempted murder.

¶ 4 In May 2008, while Mr. Allgier's case was pending, the district court received a notarized letter written by Brent Cobb (the Cobb Letter or the Letter), an inmate at the Salt Lake County jail, who was residing in a cell next to Mr. Allgier's cell. In his letter, Mr. Cobb stated that Mr. Allgier had "verbally admitted to him that he [had] shot and killed a transportation officer who worked at the Utah State Prison." Mr. Cobb also stated that Mr. Allgier had confessed to shooting the guard "twice, once in [his] stomach and chest area and [once] . . . in his head." Additionally, Mr. Cobb stated that he was afraid of Mr. Allgier because Mr. Allgier had threatened to kill Mr. Cobb and his mother if Mr. Cobb ever told anyone about his conversations with Mr. Allgier. Finally, Mr. Cobb stated that he knew of other crimes committed by unnamed individuals and that he was willing to share that knowledge with the court.

¶ 5 In June 2008, the court advised the State and Mr. Allgier of the existence of the Cobb Letter and agreed to provisionally seal the Letter to allow the State, Mr. Allgier, and other interested parties to file motions concerning whether the Letter should remain sealed. Shortly thereafter, the court permitted the Deseret News, The Salt Lake Tribune, and the Utah Headliners Chapter of the Society of Professional Journalists (collectively, the Media) to intervene "for the limited purpose of opposing any effort to prohibit or otherwise restrict public or news media access to any proceeding, record, or information in this case." The Media subsequently filed a motion to unseal the Cobb Letter, which the district court granted. In its order, the district court explained that "there [was] no doubt that the Cobb Letter [was] a court record [under the UCJA] and . . . that the public ha[d] a right of access to the letter." The court also explained that, based on the other highly prejudicial information already in the public domain concerning Mr. Allgier's alleged crime, public knowledge of the facts contained in the Cobb Letter "w[ould] not create a substantial probability that [Mr. Allgier's] right to a fair trial w[ould] be undermined." Although the district court granted the Media's motion to unseal the Cobb Letter, it ordered that the contents of the Letter remain sealed pending interlocutory appeal.

¶ 6 Mr. Allgier filed a petition for interlocutory appeal of the district court's ruling, which we granted. As an addendum to his public brief to this court, Mr. Allgier included a copy of the district court's order granting the Media's motion to unseal the Cobb Letter. That order quotes extensively from the Cobb Letter and was filed under seal by the district court. In his brief, Mr. Allgier contends that the district court erred in granting the Media's motion to unseal the Cobb Letter because the Letter does not qualify for a presumptive right of access under the UCJA. Additionally, he argues that, even if the Letter were entitled to a presumptive right of access, it should still be sealed to protect his right to a fair trial.

¶ 7 In contrast, the Media contend that the UCJA "expressly classifies letters received and retained by the court, as well as materials placed in case files, as public court records." Additionally, the Media contend that because of the extensive media coverage concerning this case already in the public domain and Mr. Allgier's inclusion of the district court's order in his *public* brief, release of the Letter will not prejudice Mr. Allgier's right to a fair trial.[1] We have jurisdiction to

---

1. In addition to these arguments, Mr. Allgier and the Media have both extensively briefed the issue of whether the Letter is entitled to a presumptive right of public access under the federal constitution, the Utah Constitution, or the common law. But because we hold that the Letter qualifies for

hear this appeal pursuant to section 78A–3–102(3)(h) of the Utah Code.

## STANDARD OF REVIEW

■ ¶ 8 "A trial court's interpretation of a rule in the Utah Code of Judicial Administration presents a question of law reviewed for correctness." [2]

## ANALYSIS

### I. THE COBB LETTER QUALIFIES FOR A PRESUMPTIVE RIGHT OF PUBLIC ACCESS UNDER THE UCJA

■ ¶ 9 The first issue that we must address is whether the district court erred in concluding that the Cobb Letter is entitled to a presumptive right of public access. As explained below, we affirm the district court's conclusion that the Cobb Letter is entitled to such a presumption under the UCJA.

¶ 10 Rule 4–202.02 of the UCJA provides that "[c]ourt records are *public* unless otherwise classified by this rule." [3] The UCJA further specifies that the term "court records" includes "case files," [4] "books, *letters,* documents, [or] papers" that are "prepared, owned, *received,* or *retained* by a court or the administrative office of the courts." [5]

¶ 11 In the instant case, the district court both *received* the Cobb Letter and *retained* it in Mr. Allgier's case file. Accordingly, based on the plain language of the UCJA, the Cobb Letter qualifies as a court record for which there is a presumptive right of public access.

■ ¶ 12 In his briefs, Mr. Allgier argues that the Letter cannot be considered a public record under the UCJA. In support of this position, he argues that the UCJA "include[s] the requirement that for a document to be properly 'received' or 'retained' [by the court], it must be filed by a party or recognized intervener." But contrary to Mr. Allgier's argument, the UCJA does not expressly or implicitly contain such a requirement. Instead, as explained above, to qualify as a public record under the UCJA, a letter need only be *received* or *retained* by the court. [6] Accordingly, because we refuse to "infer substantive terms into the text [of the UCJA]," [7] we reject the argument offered by Mr. Allgier.

¶ 13 In summary, because the district court received the Cobb Letter and retained the Letter in its files, we affirm the district court's conclusion that the Letter constitutes a court document for which there is a presumptive right of public access under the UCJA.

### II. THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT MR. ALLGIER FAILED TO REBUT THE PRESUMPTIVE RIGHT OF PUBLIC ACCESS UNDER THE UCJA

■ ¶ 14 In addition to correctly concluding that there is a presumptive right of access to the Cobb Letter under the UCJA, the district court also correctly concluded that Mr. Allgier failed to rebut that presumption. Even when the UCJA creates a presumptive right of access to a particular document, the public's ability to access the document is not absolute. [8] Specifically, rule 4–202.04(3) of the UCJA provides that, in ruling on a motion to seal an otherwise public record, a

a presumptive right of access under the UCJA, we need not address whether it would also qualify for a presumptive right under these alternative avenues.

2. *N.A.R. v. Walker,* 2001 UT 98, ¶ 4, 37 P.3d 1068.

3. Utah Code Jud. Admin. R. 4–202.02(1) (emphasis added).

4. *Id.* 4–202.02(2)(E).

5. *Id.* 4–202.01 (emphases added).

6. *See id.*

7. *Arredondo v. Avis Rent A Car Sys., Inc.,* 2001 UT 29, ¶ 12, 24 P.3d 928 (internal quotation marks omitted).

8. *See State v. Archuleta,* 857 P.2d 234, 237 (Utah 1993) ("Even if a qualified right of access to a criminal proceeding or judicial records does exist, that right is not absolute."); Utah Code Jud. Admin. R. 4–202.04(3).

judge shall, "(A) make findings and conclusions about specific records; (B) identify and balance the interests favoring opening and closing the record; and (C) if the record is ordered [sealed], determine there are no reasonable alternatives ... sufficient to protect the interests favoring [sealing the record]." [9]

¶ 15 Here, the district court made a specific finding that the Cobb Letter qualified as a public document under the UCJA and therefore complied with subsection (A) of rule 4–202.04(3).

¶ 16 The district court also "identif[ied] and balance[d] the interests favoring opening and closing" the Cobb Letter as required by subsection (B) and correctly concluded that Mr. Allgier had not rebutted the presumptive right of public access. Before the district court, Mr. Allgier argued that unsealing the Cobb Letter would impair his right to a fair trial. According to Mr. Allgier, potential jurors would be tainted by the sensitive and inflammatory information within the Letter, especially because the Letter would likely be inadmissible as evidence. The district court considered the specific language within the Cobb Letter and its potential impact on Mr. Allgier's right to a fair trial. But the district court concluded that, given the amount and type of prejudicial information already in the public domain at the time of its decision, unsealing the Cobb Letter would not undermine Mr. Allgier's right to a fair trial. The district court therefore concluded that the interests favoring unsealing the Cobb Letter were not outweighed by the interests articulated by Mr. Allgier in favor of sealing the Letter.

¶ 17 In affirming the decision of the district court that the interests favoring unsealing the Letter outweigh the interests that favor keeping it sealed, we note that, since the time of the district court's decision, most of the significant information contained in the Cobb Letter has been introduced into the public arena. Specifically, in his brief to this court—which is a public document—Mr. Allgier included the Third District Court's decision to unseal the Cobb Letter. That decision—which was filed under seal—quoted the portion of the Cobb Letter in which Mr. Cobb stated (1) that Mr. Allgier had "verbally admitted to him that he [had] shot and killed a transportation officer who worked at the Utah State Prison"; (2) that Mr. Allgier had confessed to shooting the guard "twice, once in [his] stomach and chest area and [once] ... in his head"; and (3) that he was afraid of Mr. Allgier because Mr. Allgier had threatened to kill him and his mother if he ever told anyone about his conversations with Mr. Allgier. Because these portions of the Letter have been placed by Mr. Allgier into the public arena and are therefore accessible to the Media, any significant interests that would be protected by requiring the Letter to remain sealed are now greatly diminished.

¶ 18 Given that the district court determined that the interests weighed in favor of unsealing the Cobb Letter, under the UCJA standard it was not required to determine that "there are no reasonable alternatives to [sealing] sufficient to protect the interests favoring [sealing]." [10] However, the district court noted that, even if the interests otherwise weighed in favor of sealing the Cobb Letter, Mr. Allgier's right to a fair trial would still be sufficiently protected by reasonable alternatives to sealing the Letter. We agree.

¶ 19 Although " '[t]here can be no doubt that pretrial ... publicity that comes to the attention of prospective ... jurors can deprive a criminal defendant of a fair trial,' " [11] the district court correctly concluded that

---

**9.** UTAH CODE JUD. ADMIN. R. 4–202.04(3). Notably, the balancing standard codified in subsection (B) is nearly identical to the balancing of interest standard used to determine whether a presumptive right of public access created by the common law has been overcome. *See, e.g., Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 970 A.2d 656, 676 (2009) ("When the public's interest in judicial monitoring is *outweighed* by countervailing considerations ... [otherwise public] court documents ... may be shielded from public view." (emphasis added)); *see also Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986) (noting that a common law right of access "is more easily overcome than the constitutional right of access").

**10.** UTAH CODE JUD. ADMIN. R. 4–202.04(3)(C).

**11.** *Archuleta*, 857 P.2d at 237–38 (quoting *KUTV, Inc. v. Conder*, 668 P.2d 513, 518 (Utah 1983)).

Mr. Allgier's right to a fair trial could be protected through the regular, time-honored processes for selecting jurors, even if the information in the Cobb Letter were added to the current media coverage. The district court specifically mentioned the use of "an enlarged venire," a "thorough and searching voir dire," and "a detailed jury questionnaire" as reasonable and sufficient alternatives to sealing the Letter.

¶ 20 Each of the alternatives mentioned by the district court have been recognized by other jurisdictions as reasonable ways to ensure a fair trial. Specifically, "enlarging the venire" is recognized as a potential way to "alleviate[ ] the problems" in a particular case associated with selecting "a fair and impartial jury." [12] In addition, "voir dire has long been recognized as an effective method of rooting out [potential juror] bias, especially when conducted in a careful and thorough[ ] manner." [13] Finally, "jury questionnaires" provide a reasonable method for "identify[ing] the extent of exposure prospective jurors may have had to news coverage about this case and assist[ing] counsel in ferreting out people with fixed opinions." [14] These reasonable alternatives to sealing the Letter would provide sufficient protection to Mr. Allgier's right to a fair trial in this case regardless of whether the respective interests otherwise weighed in favor of or against sealing the Letter. Thus, the district court correctly concluded that it would be unable to justify sealing the Letter in this case due to the existence of several reasonable and sufficient alternatives.

¶ 21 We therefore hold that the district court correctly concluded that Mr. Allgier failed to overcome the presumptive right of public access to the Cobb Letter.

---

**12.** *Toyota Motor Corp. v. McLaurin*, 642 So.2d 351, 358 (Miss.1994).

**13.** *In re Nat'l Broad. Co.*, 653 F.2d 609, 617 (D.C.Cir.1981); *see also Press–Enter. Co. v. Superior Court*, 478 U.S. 1, 15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("Through voir dire, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict."); *State ex rel. Beacon Journal Pub. Co. v. Kainrad*, 46 Ohio St.2d 349, 348 N.E.2d 695, 697 (1976) ("The majority of this

## CONCLUSION

¶ 22 We affirm the district court's conclusion that the Cobb Letter qualifies for a presumptive right of access under the UCJA. Additionally, we hold that the district court correctly concluded that Mr. Allgier failed to overcome that presumptive right of public access to the Letter. We therefore affirm the district court's order granting the Media's motion to unseal the Cobb Letter.

¶ 23 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Associate Chief Justice DURRANT's opinion.

---

court is of the opinion that where the constitutional right of a criminal defendant to a fair trial can be protected by the traditional methods of voir dire, continuance, change of venue, jury instructions or sequestration of the jury, the press and public cannot be excluded from a criminal trial or hearing and no order can be made which prohibits the publishing of news reports about statements made or testimony given during such proceedings.").

**14.** *United States v. Loughner*, 769 F.Supp.2d 1188, 1196 (D.Ariz.2011).