2012 UT 54

Jason and Melissa MILLER, individually and as guardians ad litem for M.M., a minor, Plaintiffs–Appellants–Cross–Appellees,

v.

UTAH DEPARTMENT OF TRANSPORTATION, Defendant–Appellee–Cross–Appellant.

No. 20100629.

Supreme Court of Utah.

Aug. 31, 2012.

---

L. Rich Humpherys, Alain Balmanno, Karra J. Porter, Salt Lake City, for plaintiffs.

Mark L. Shurtleff, Att'y Gen., Peggy Stone, Asst. Att'y Gen., for defendant.

Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 Jason and Melissa Miller, individually and as guardians ad litem for their minor child, appeal from a judgment entered after a

jury verdict. The Millers argue that the district court erred in ruling certain evidence inadmissible under federal law, and in denying their requests for an instruction against drawing adverse inferences (adverse inference instruction) regarding the excluded evidence and for jury instructions regarding the statutory cap on damages against the state and the reserve fund from which such damages are paid. They further argue that the court erred in refusing to administer a written questionnaire during voir dire to examine potential jurors' views on tort reform and their possible reluctance as taxpayers to find against the state. Finally, the Millers argue that the court erred in rejecting their request to exclude witnesses under Utah Rule of Evidence 615. The Utah Department of Transportation (UDOT) cross-appeals, challenging the jury instruction regarding its duty of care.

¶ 2 We hold that the district court abused its discretion in refusing to issue the adverse inference instruction, and remand for a new trial on that ground. On remand, we offer guidance on the remaining issues pursuant to Utah Rule of Appellate Procedure 30(a). We affirm the district court's ruling that the accident history evidence was inadmissible under 23 U.S.C. § 409 (Section 409). We further affirm the district court's handling of voir dire and the Millers' proposed jury instructions regarding the statutory damages cap and the reserve fund. On the cross-appeal, we affirm the jury instruction regarding UDOT's duty of care. We hold that the district court erred, however, in refusing to entertain the Millers' motion to exclude witnesses.

## BACKGROUND

¶ 3 This case arises from a June 2004 automobile accident on Interstate 15. A motorist suffered a medical emergency, causing her to lose control of her car and cross the open median. Her car collided with the Millers' car. She was killed, and the Millers were severely injured and incurred large medical expenses. In September 2005, the Millers sued UDOT, alleging that it negligently failed to install median barriers at the scene of the accident.

¶ 4 Prior to trial, the Millers sought to obtain from UDOT evidence regarding the history of accidents on the stretch of highway in question. Reports generated by officers investigating crashes had been compiled by UDOT in connection with its participation in certain federally funded highway projects. Section 409, as explained in detail below, provides that data compiled for such purposes cannot be subjected to discovery or entered into evidence in any state or federal proceeding. UDOT moved for an order to prohibit disclosure and use of the accident history, followed by a motion for a protective order. The district court granted the protective order, ruling that the accident history was not discoverable under Section 409.

¶ 5 The Millers then sought to obtain the same accident history data from the University of Utah's Intermountain Injury Control Research Center (the University). The University had acquired the data from UDOT for use in a safety study unrelated to the federal programs covered by Section 409. The Millers sought to compel the University to release the data. The University moved to quash, and the district court granted the motion after reviewing the University's data in camera and determining that it was barred from discovery under Section 409.

¶ 6 Concerned that the jurors, as Utah taxpayers, might be reluctant to find against UDOT, the Millers requested that the district court administer a written jury questionnaire during voir dire to examine potential jurors' willingness to find against the state and their views on tort reform. The court denied this request.

¶ 7 On the second day of trial, the Millers requested that certain witnesses be excluded during testimony. The district court denied this request on the grounds that the Millers had not invoked the exclusionary rule at the outset of trial.

¶ 8 At the close of trial, the Millers submitted proposed jury instructions that would inform the jury of the statutory cap on personal injury awards against the state and of the reserve fund from which such awards are paid. The district court rejected these instructions. UDOT objected to a jury in-

struction regarding its duty of care; the district court overruled the objection, and the instruction was given to the jury.

¶ 9 The Millers also submitted a proposed jury instruction informing the jury of the existence of Section 409 and directing the jury not to let the absence of accident history evidence affect its deliberations. The district court rejected this proposed instruction.

¶ 10 In a special verdict, the jury found that UDOT was not negligent, and the court entered a judgment of no award. The Millers timely appealed, and UDOT cross-appealed. We have jurisdiction under Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 11 Since our standard of review varies according to the issues discussed, we enunciate the applicable standards in the appropriate sections of this opinion.

## ANALYSIS

### I. ADVERSE INFERENCE INSTRUCTION

■ ¶ 12 The Millers argue that the district court erred in refusing to grant the Millers' request for a jury instruction directing the jury not to let their deliberations be affected by the absence of evidence barred from discovery under Section 409. We agree.

■■ ¶ 13 We review a district court's refusal to give a jury instruction for abuse of discretion.[1] But in certain circumstances,

the court's discretion will be strictly cabined. For instance, a criminal defendant is generally entitled to have the charged offense defined for the jury. Similarly, "parties are entitled to have their theories of the case submitted to the jury in the court's instructions, provided there is competent evidence to support them." *Paulos v. Covenant Transp., Inc.*, 2004 UT App 35, ¶ 11, 86 P.3d 752 (internal quotation marks omitted).

> It is the duty of the trial court to cover the theories and points of law of both parties in its instructions, provided there is competent evidence to support them. However, in determining whether or not the court adequately discharged this duty and fairly presented the issues to the jury, the instructions must be considered as a whole. Furthermore, the trial court may properly refuse to give requested instructions where it does not accurately reflect the law governing the factual situation of the case.

*Black v. McKnight*, 562 P.2d 621, 622 (Utah 1977) (footnotes omitted); *see also, e.g., McConnell v. Union Carbide Corp.*, 937 So.2d 148, 153 (Fla.Dist.Ct.App.2006) ("[R]efusing jury instructions is reviewed under a mixed standard of de novo and abuse of discretion."). Thus the refusal to give a jury instruction is reviewed for abuse of discretion, although in some circumstances that discretion will be narrowly constrained.

¶ 14 The Millers' inability to introduce evidence regarding the history of prior accidents at the scene of their own crash neces-

---

1. In recent decades, this court has often stated that the refusal to give a jury instruction is reviewed for correctness. *E.g., State v. Gallegos*, 2009 UT 42, ¶ 10, 220 P.3d 136 ("A trial court's refusal to give a jury instruction presents a question of law, which this court reviews for correctness, giving no particular deference to the trial court." (alterations omitted) (internal quotation marks omitted)); *Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989) ("An appeal challenging the refusal to give jury instructions presents questions of law only. Therefore, we grant no particular deference to the trial court's rulings."). The cases adopting this standard of review rest ultimately on a citation to *Western Kane County Special Service District No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377–78 (Utah 1987). There, this court observed that "conclusions of

law are simply reviewed for correctness without any special deference." While true in itself, this proposition does not establish that *all* decisions by a district court regarding whether to issue a requested instruction "present[ ] questions of law *only*," *Ramon*, 770 P.2d at 133 (emphasis added). Rather, as we clarify today, in certain circumstances a district court's discretion will be constrained such that a party is legally entitled to have a particular instruction given to the jury. In those circumstances, refusal constitutes an error of law, and an error of law always constitutes an abuse of discretion. *E.g., Goggin v. Goggin*, 2011 UT 76, ¶ 26, 267 P.3d 885. To the extent earlier cases conflict with this opinion in their enunciation of the standard of review for refusal to give a jury instruction, this opinion controls.

sarily weakened their case.[2] Aware of this, and concerned that the Millers not be unduly prejudiced, the district court instructed UDOT prior to trial that it was not to use the absence of this evidence to suggest that this stretch of road had no notable accident history. The Millers filed a memorandum detailing their concerns in this area, and on the morning of trial the court again warned UDOT against implying that "the absence of accidents gives a reasonable inference of safety."

¶ 15 At trial, however, UDOT repeatedly elicited testimony on the subject of accident history, albeit in a general sense. UDOT's safety expert, discussing the process by which the Department decides whether to install a median barrier, testified that among the factors informing the decision are "geometrics, alignment, traffic volumes, median widths, *crash history*, all of those things." (Emphasis added.) Similarly, when cross-examining the Millers' expert witness, UDOT's counsel questioned him regarding the significance of accident data.

¶ 16 After trial, the Millers submitted a proposed jury instruction reading in part:

> UDOT maintains a computer-based database of the accidents occurring on State and Federal Roads in Utah.... This database is maintained under federal guidelines for the purpose of receiving Federal-aid highway funding for improvements of state and federal roadways.
>
> [Section 409] prohibits accident victims who are pursuing lawsuits (like the Millers), and their attorneys or experts, from obtaining or using information from this database. Consequently you should not be critical of the Millers for not having that information or of UDOT for not providing it.

The court rejected this instruction.

¶ 17 UDOT argues that it "did not argue, suggest, or imply that the crash site was safe because there was no accident history for the site prior to 1998," and that "[a]ccident history itself was not an unfair trial topic; only

accident history prior to the time that the Millers had it." We disagree. The Millers' theory of the case was that UDOT was negligent in failing to install a median barrier due to decisions made in 1995. Section 409, however, left them unable to introduce the accident history for the relevant time period. Once the concept of accident history as an important factor in the decision whether to install a barrier was brought to the jury's attention—even if not tethered to a particular time period—a jury might well assume from the absence of accident history evidence that UDOT's decision to not install a barrier was reasonable.

¶ 18 UDOT argues that the Millers joined it in eliciting testimony and submitting depositions discussing the role of accident history in making safety determinations. This is true, but beside the point. The requested jury instruction was even-handed, directing the jury not to let the absence of accident history evidence affect their deliberations in any way. While the instruction would not have prejudiced UDOT, it would have lessened the prejudice the Millers suffered from their inability under Section 409 to introduce that evidence.

¶ 19 It is true, as UDOT now argues, that at trial it "did not argue that a lack of accident history at the crash site meant that the road was safe." But that does not settle the question. UDOT repeatedly introduced testimony suggesting that accident history was a factor informing its consideration of whether to install a median barrier. But no accident history could be introduced at trial due to Section 409. Thus the Millers were entitled to have the jury made aware of Section 409 and instructed that the absence of evidence regarding accident history should not affect their deliberations in either direction on the question of UDOT's negligence.

¶ 20 Where evidence potentially crucial to a party's theory of the case is barred, that party may be entitled to an appropriately worded adverse inference instruction. Here, the Millers were so entitled, and the district

---

**2.** For reasons given in Part II.A below, we affirm the district court's ruling that the accident history was barred from discovery under Section 409.

court's discretion to refuse their requested instruction was accordingly cabined, *see supra* ¶ 13. We conclude that the district court abused its discretion in refusing to issue the instruction, thereby prejudicing the Millers' ability to obtain a fair hearing of their claim. Accordingly, we reverse the judgment of the district court and remand for a new trial.

## II. ISSUES LIKELY TO ARISE ON REMAND

¶ 21 "If a new trial is granted, the court may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case." UTAH R.APP. P. 30(a). We therefore discuss issues remaining on appeal and cross-appeal likely to arise at trial on remand.

### A. Section 409

¶ 22 Before trial, the Millers sought to obtain data regarding the history of accidents near the scene of their crash. They sought this data first from UDOT, then from the University. As noted above, the district court ruled that Section 409 prohibited discovery of the data as held by both entities. On appeal, the Millers argue that, even if Section 409 bars from discovery the data as held by UDOT, it should not apply to the data as held by the University.[3]

¶ 23 "The interpretation of a statute is a question of law, which we review for correctness." *State v. J.M.S. (State ex rel. J.M.S.),* 2011 UT 75, ¶ 9, 280 P.3d 410 (internal quotation marks omitted). "When interpreting a statute, we look first to its text. We employ plain language analysis to carry out the legislative purpose of the statute as expressed through the enacted text." *Richards v. Brown,* 2012 UT 14, ¶ 23, 274 P.3d 911 (footnote omitted). Furthermore, a fed-

eral "statute granting a privilege is to be strictly construed so as to avoid a construction that would suppress otherwise competent evidence." *Baldrige v. Shapiro,* 455 U.S. 345, 360, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) (internal quotation marks omitted).

¶ 24 Section 409 provides:

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409.

¶ 25 In *Pierce County, Washington v. Guillen,* 537 U.S. 129, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003), the U.S. Supreme Court interpreted the scope of Section 409. In that case, the survivor of a woman killed in a car accident requested that Pierce County reveal data concerning the history of other accidents at the same location. *Id.* at 136, 123 S.Ct. 720. The county denied the request, citing Section 409. *Id.*

¶ 26 The Court considered three possible constructions of the statute. Pierce County offered the most expansive interpretation, arguing that "a document initially prepared and then held by an agency ... for purposes unrelated to § 152[4] becomes protected under

---

3. The accident data as held by the University have been combined with data from other sources, and it is possible that this other data may not be barred under Section 409. The Millers conceded at oral argument before this court, however, that only the data from UDOT would help them establish their theory of negligence. We therefore confine our analysis to the effect of Section 409 on the UDOT data.

4. The current version of Section 409 refers not to section 152 ("Hazard elimination program"), as does the version discussed in *Pierce County,* 537 U.S. at 135–36, 123 S.Ct. 720, but to section 148 ("Highway safety improvement program"). 23 U.S.C. § 409; *see also* Safe, Accountable, Flexible, Efficient Transportation Equity Act, Pub. L. No. 109–59, § 1401(e)(2)(A), 119 Stat. 1227 (2005) (providing for an interim period during

§ 409 when a copy of that document is collected by another agency ... for purposes of § 152." *Id.* at 143, 123 S.Ct. 720. Under this reading, once data have been given by local actors to a state agency in order for that state agency to participate in the federal programs referenced in Section 409, the data become protected even as retained by the local actors that originally collected them for other purposes. *Id.*

¶ 27 The plaintiff in the original lawsuit argued for the most restricted reading of Section 409, contending that the section "protects only materials actually created by the agency responsible for seeking federal funding for § 152 purposes." *Id.* at 144, 123 S.Ct. 720. Under this reading, data collected by local actors for purposes not contemplated by Section 409 remain subject to discovery even after transfer to a state agency for such purposes and can be discovered from the state agency as well as the local one.

¶ 28 As intervenor, the United States took a middle position, arguing that Section 409

protects all ... data actually compiled *or* collected for § 152 purposes, but does not protect information that was originally compiled or collected for purposes unrelated to § 152 and that is currently held by the agencies that compiled or collected it, even if the information was at some point "collected" by another agency for § 152 purposes.

*Id.* Under this reading, the data are discoverable from the local actors who originally generated them for other purposes but are not discoverable from the state agencies to which they have been transmitted for purposes contemplated by Section 409. The U.S. Supreme Court adopted this third construction of the statute, holding unanimously that Section 409 "protects not just the information an

agency generates ... for § 152 purposes, but also any information that an agency collects from other sources for § 152 purposes." *Id.* at 145, 123 S.Ct. 720.

¶ 29 The Court concluded, however, that Section 409 is

inapplicable to information compiled or collected for purposes unrelated to § 152 and held by agencies that are not pursuing § 152 objectives.... Put differently, there is no reason to interpret § 409 as prohibiting the disclosure of information compiled or collected for purposes unrelated to § 152, held by government agencies not involved in administering § 152, if, before § 152 was adopted, plaintiffs would have been free to obtain such information from those very agencies.

*Id.* at 145–46, 123 S.Ct. 720.

¶ 30 The instant appeal, however, poses a question not addressed in *Pierce County*. The two cases are factually similar up to a certain point: in both, plaintiffs seek to discover data that were generated by local actors for purposes not contemplated by Section 409 and then collected by a state agency for purposes that the section does cover.[5] In the instant case, however, the data were subsequently transferred to a third entity (the University), which now holds them for purposes other than those contemplated by Section 409. *Pierce County* does not directly decide the question of whether the data are still barred from discovery in the hands of the University. We hold that they are.

¶ 31 First, the U.S. Supreme Court determined that Section 409 is "inapplicable to information compiled or collected for purposes unrelated to § 152 *and* held by agencies that are not pursuing § 152 objectives." *Id.* at 145–46, 123 S.Ct. 720 (emphasis add-

---

which funds for projects originally eligible for funding under section 152 can be directed towards projects under 148).

All references to section 152 in the passages from *Pierce County* quoted in the instant opinion should be read as extending to all federal highway safety programs falling within the scope of Section 409.

5. Under *Pierce County,* data generated for purposes beyond Section 409's scope are discoverable if a party can obtain them from an entity

which did not collect them for Section 409 purposes. But this does not help the Millers. The investigating officers submitted their accident reports to the Utah Department of Public Safety, but by the time the Millers sought to obtain the raw data from these reports, all investigation records prior to 1998 had been destroyed. Since the Millers' theory of the case is that UDOT's negligent failure to install a median barrier stems from decisions made in 1995, data after 1998 are not useful to them.

ed). When generated and stored at the local level, as in *Pierce County*, the information met both of these criteria: it had not been compiled or collected for objectives relevant to Section 409, *and* it was not held by an agency pursuing such objectives. In this case, when held by UDOT, the information met neither criterion: it had been collected by UDOT for purposes covered by Section 409, *and* it was held by an agency pursuing such purposes (viz., UDOT). As held by the University, the information meets the second criterion—it is not held by an agency pursuing objectives relevant to Section 409—but still does not meet the first one, because the information was originally compiled by UDOT in pursuit of such objectives.

¶ 32 Second, the U.S. Supreme Court has identified the purpose of Section 409 as overcoming

> the States' reluctance to ... make ... governments easier targets for negligence actions by providing would-be plaintiffs a centralized location from which they could obtain much of the evidence necessary for such actions.... Congress [therefore] adopt[ed] a measure eliminating an unforeseen side effect of the information-gathering requirement of § 152....

*Id.* at 147, 123 S.Ct. 720.

■■■■ ¶ 33 It is true that federal "statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth." *Id.* at 144, 123 S.Ct. 720. And in construing Section 409 in *Pierce County*, the U.S. Supreme Court rejected the expansive reading offered by the county, thereby preserving a party's ability to discover data generated for and held by an agency pursuing objectives unrelated to those contemplated by Section 409. Our construction of Section 409 likewise preserves that ability while remaining faithful to the purpose of the statute.

¶ 34 *Pierce County* cautioned that Section 409 should not be interpreted so as to render parties unable to obtain information which they would have been free to obtain prior to the enactment of the federal highway safety programs that the section covers. *Id.* at 146, 123 S.Ct. 720. Our holding today does not do so. UDOT compiled the accident history

data to participate in such programs, and the University obtained the data from UDOT. Therefore, the Millers would not have been able to obtain the data from either entity in the absence of those programs.

¶ 35 Nothing in the text of the statute, or in the construction of that statute adopted by the U.S. Supreme Court, indicates that the bar on discovery, once attached under Section 409, expires by virtue of the data being transferred to some other entity. And the purpose of the statute, as identified by the Court, is best furthered by construing the bar on discovery as applicable to the data collected by UDOT even after those data are transferred to another entity for purposes not covered by Section 409. Accordingly, we affirm the district court's ruling that the data sought by the Millers from the University is barred from discovery under that section.

### B. Voir Dire

■■■■■ ¶ 36 Before trial, the Millers requested that potential jurors be administered a written questionnaire as part of the voir dire process. The Millers were concerned that potential jurors, as Utah taxpayers, might be reluctant to find against a state entity because any award extracted from that entity would be paid for by their tax dollars. Accordingly, the Millers submitted a proposed questionnaire to examine potential jurors' views on tort reform and personal injury law, as well as their potential reluctance to compensate a victim for injuries caused by government negligence. The district court judge rejected the request, explaining that he was "not really a fan of" jury questionnaires and that there was no need for one in this instance.

> The scope and conduct of voir dire examination is within the discretion of the trial judge.... [W]hen we review a trial court's voir dire decisions to determine whether the court abused its discretion, we ask whether, considering the totality of the questioning, counsel was afforded an adequate opportunity to gain the information necessary to evaluate jurors.

*Taylor v. State*, 2007 UT 12, ¶ 70, 156 P.3d 739 (internal quotation marks omitted).

¶ 37 Here, although the district court rejected the Millers' proposed written questionnaire, it did ask during voir dire whether any potential juror's "consideration of this case would be affected by the fact that the State of Utah is a defendant." The court also asked whether the jury pool had been exposed to information regarding tort reform, and whether that exposure would influence their deliberations. No member of the pool who responded in the affirmative to either question was selected as a member of the jury. Further, the Millers' counsel did not, at any stage in the voir dire process, raise any objection or request any further questioning. Counsel was afforded an adequate opportunity to evaluate the jury pool, and the district court did not abuse its discretion in its handling of voir dire.

¶ 38 We pause to note that "jury questionnaires provide a reasonable method for ... assisting counsel in ferreting out people with fixed opinions." *State v. Allgier*, 2011 UT 47, ¶ 20, 258 P.3d 589 (alteration omitted) (internal quotation marks omitted). Indeed, "there is much to recommend using a jury questionnaire in appropriate cases.... [because] questionnaires may be useful in obtaining a great deal of information about prospective jurors, including sources of possible bias, with only a small investment of the trial court's time." *Claypoole v. Winward Elec., Inc.*, 2010 UT App 77U, para. 2, 2010 WL 1394047. While a district court's conduct of voir dire remains a matter of discretion, we encourage the use of written questionnaires where appropriate; they often elicit useful information at little cost in time and resources to the court. *See* Robert B. Sykes & Francis J. Carney, *Attorney Voir Dire and Jury Questionnaire: Time for a Change*, UTAH B.J., Aug. 1997, at 13, 16–17; *see also* Thomas J. Hurney, Jr. & Randal H. Sellers, *Picking Juries: Questionnaires and Beyond*, 75 DEF. COUNS. J. 370, 375–77 (2008) (discussing use of questionnaires in civil cases).

### C. Jury Instructions

**1. The Millers' Proposed Jury Instructions**

¶ 39 The Millers appeal the denial of two of their proposed jury instructions. One of these instructions would have informed the jury of the cap on governmental personal injury provided by Utah Code section 63G-7-604. The other instruction would have informed the jury that any award would be paid out of a reserve fund and not directly from tax revenue.

¶ 40 We review a district court's refusal to give a jury instruction for abuse of discretion. *Supra* ¶ 13.

¶ 41 The district court did not abuse its discretion in denying the Millers' request for these two jury instructions. The existence of a statutory cap on personal injury awards against the state, or of a special fund from which such awards are paid, was not part of the Millers' theory of the case, nor was it the subject of any evidence relevant to the determination of UDOT's negligence. In rejecting these instructions, the court properly confined the jury's consideration to applicable law.

**2. Jury Instruction Regarding UDOT's Duty of Care**

¶ 42 On cross-appeal, UDOT argues that the district court gave an erroneous jury instruction regarding its duty of care. "Claims of erroneous jury instructions present questions of law that we review for correctness." *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250.

¶ 43 The instruction read in pertinent part:

The Utah Department of Transportation had the legal duty to exercise reasonable care to: a. Investigate, analyze and evaluate roadway safety; b. Design, construct and maintain the freeway in a reasonably safe condition for motorists; and c. Take reasonable measures to minimize or prevent dangerous conditions that would create unreasonable risks of foreseeable injury to motorists.

¶ 44 UDOT concedes that "[s]ubpart b of the instruction is correct," but argues that subparts a and c have no support in Utah law. The Millers respond that these subparts are an accurate statement of UDOT's "broad statutory duties" under Utah Code

section 72–1–201. Section 201 provides that UDOT has "the general responsibility for planning, research, design, construction, maintenance, security, *and safety* of state transportation systems," and that UDOT shall "plan, develop, construct, and maintain state transportation systems that are *safe,* reliable, [and] environmentally sensitive." Utah Code § 72–1–201(1), (4) (emphases added). We agree with the Millers that the challenged jury instruction was an accurate and appropriate statement of UDOT's duty of care.

¶ 45 UDOT argues that "it is not an insurer of the public's safety," and that it "is obligated only to fix problems that it knows or reasonably should know about." But nothing in the challenged jury instruction goes beyond UDOT's duties. Subpart a of the instruction, which states that UDOT has the duty to "investigate, analyze and evaluate roadway safety," fairly reflects UDOT's statutorily explicit "responsibility for ... [the] safety of" public roads. *Id.* § 72–1–201(1). Subpart c, which states that UDOT has the duty to "take *reasonable* measures to minimize or prevent dangerous conditions that would create *unreasonable* risks of *foreseeable* injury to motorists" (emphases added), is an unobjectionable statement drawn from general principles of tort law. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(a) (2010) ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm."). While in exceptional cases a court may decide that countervailing principles or policy considerations require that this duty be modified or abrogated, *id.* § 7(b), UDOT has not argued that such a departure from general principles of tort law is appropriate here.

¶ 46 Indeed, this and other courts have explicitly affirmed that the government's duty of care to maintain road safety is susceptible to general tort analysis. *See Bramel v. Utah State Rd. Comm'n,* 24 Utah 2d 50, 465 P.2d 534, 536 (1970) ("The answer to the [question of the commission's negligence] is to be found in applying the test found so generally throughout the law of torts, and which is also applicable here: Did the defen-

dant ... discharge its duty of exercising reasonable care under the circumstances[?]"); *see also, e.g., Provins v. Bevis,* 70 Wash.2d 131, 422 P.2d 505, 510 (1967) ("[A]lthough a county is not an insurer against accident ... it is nevertheless obligated to exercise ordinary care to keep its public ways in a safe condition for ordinary travel."). The challenged instruction was an appropriate statement of UDOT's duty of care under both the statute and general tort principles, and we find no error in the district court issuing it to the jury.

### D. *Witness Exclusion*

¶ 47 At the beginning of the second day of trial, the Millers' counsel invoked the exclusionary rule: "Your Honor.... I notice that we have some witnesses in the courtroom and the exclusionary rule applies." The district court ruled that counsel was "too late in invoking" the rule: "It's my view that that rule has to be invoked at the outset of trial." After the district court denied the motion, counsel made no further objection. On appeal, the Millers argue that exclusionary requests are not limited to the onset of trial, and that the court erred in so ruling. We agree.

¶ 48 "At a party's request, the court *must* order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court *may* do so on its own. But this rule does not authorize excluding [certain enumerated categories of persons]." Utah R. Evid. 615 (emphases added). When interpreting an evidentiary rule, we look first to the rule's plain language. *State v. Mead,* 2001 UT 58, ¶ 44, 27 P.3d 1115. The plain language of rule 615 provides that, while a court's sua sponte exclusion of witnesses is a discretionary function, parties are entitled on request to have witnesses excluded unless those witnesses are exempt from exclusion. Further, the rule imposes no time limitation on requests to exclude. And while "[t]he trial court's decision to exempt a witness from exclusion under rule 615 is reviewed for abuse of discretion," *State v. Billsie,* 2006 UT 13, ¶ 6, 131 P.3d 239, here there is no suggestion that the Millers requested the exclusion

of an exempt witness, and the court did not deny the rule 615 motion on that basis.

¶ 49 We clarify that a party's ability to request the exclusion of witnesses pursuant to rule 615 is not limited to the outset of trial. The district court erred in so ruling.

## CONCLUSION

¶ 50 We hold that the district court abused its discretion in refusing to instruct the jury that it should draw no adverse inference from the absence of accident history evidence, and we remand for a new trial on that basis. On remand, we offer guidance on the remaining issues pursuant to Utah Rule of Appellate Procedure 30(a). We affirm the district court's ruling that Section 409 renders the accident history evidence inadmissible. We further affirm the district court's handling of voir dire and its rejection of the Millers' proposed jury instructions regarding the statutory damages cap and the reserve fund. And on cross-appeal, we affirm the jury instruction regarding UDOT's duty of care. However, we hold that the court erred in refusing to entertain the Millers' motion to exclude witnesses on the ground that they did not so move at the opening of trial.