**2013 UT App 161**

### THE UTAH COURT OF APPEALS

TIMOTHY PAGET AND ANNETTE PAGET,
Plaintiffs and Appellants,
*v.*
STATE OF UTAH, DEPARTMENT OF TRANSPORTATION,
Defendant and Appellee.

Opinion
No. 20120481-CA
Filed June 27, 2013

Third District, Salt Lake Department
The Honorable Robert P. Faust
No. 080925951

Mark R. Taylor and David C. Biggs, Attorneys for
Appellants
John E. Swallow and Peggy E. Stone, Attorneys for
Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JAMES Z. DAVIS and CAROLYN B. MCHUGH concurred.

ORME, Judge:

¶1     Timothy and Annette Paget initiated this negligence action against the Utah Department of Transportation (UDOT) after a horrific car crash in which Annette was severely injured and their daughter was killed. The district court granted summary judgment in favor of UDOT, and the Pagets now appeal from that decision. While we affirm the court's ruling on the inadmissibility of expert testimony, we reverse the summary judgment.

BACKGROUND

¶2    In January 2007, a westbound car crossed over the median on I-80 in Parley's Canyon and into oncoming eastbound traffic, colliding with the Pagets' vehicle. Annette was severely and permanently injured, and the Pagets' daughter died in the crash. The Pagets sued UDOT, claiming that UDOT was negligent in designing and constructing the portion of I-80 on which the accident occurred because there was no median barrier in place to separate eastbound and westbound traffic.

¶3    UDOT filed a motion for summary judgment, arguing that it had not breached the applicable standard of care and that the Pagets' proposed expert testimony was inadmissible. UDOT supported its motion with an expert report from Thomas Alcorn, a forensic engineer. In preparing his report, Alcorn reviewed incident reports from the crash, photographs of the site, and I-80 design drawings. He also conducted a personal inspection of the crash site and measured the site's road grade at 1.77%–2.2% and the width of its median at between 43 and 44 feet. Alcorn's report thoroughly discussed the historical evolution of the design standards developed by the American Association of State Highway and Transportation Officials (AASHTO), which UDOT has adopted for use in designing roads and highways in Utah. Using the AASHTO standard applicable to the construction of median barriers, Alcorn concluded that a median barrier at the crash site was "not required" when the road was first constructed and was only "optional" at the time of the crash. Alcorn came to these two conclusions by plugging the crash site's median width and average daily traffic volume into AASHTO's median barrier requirement matrix.[1] Because the matrix indicated that a median

---

[1] The AASHTO median barrier requirement matrix, contained within the AASHTO Roadside Design Guide, has undergone several revisions and iterations in the last several decades. For example, the 1968 matrix contained only two categories: "Median Barrier Required" and "Median Barrier Not Required."

(continued...)

barrier was only "optional" at the time of the crash, Alcorn concluded that "median barriers were not warranted or required" and that UDOT's decision not to construct a barrier at the crash site fully complied with the applicable AASHTO standard. Alcorn's conclusion did not discuss the road grade at the crash site, the typical weather conditions in Parley's Canyon, the traffic density, or anything other than the matrix's "optional" categorization. Given Alcorn's conclusion, UDOT asserted that its decision not to construct a median barrier was reasonable—essentially because a barrier was optional—and thus satisfied its duty of care.

¶4     The Pagets offered a report and subsequent affidavit in opposition to UDOT's motion for summary judgment from Edward Ruzak, a civil and traffic engineer from California. Ruzak did not travel to the crash site nor did he take any of his own measurements. Instead, Ruzak reviewed an incident report from the crash, photographs, design drawings, "I-80 Traffic Volumes," and "[c]ollision reports on I-80 near MP 137."[2] Ruzak's report

---

[1](...continued)
The 1971 matrix added an "Optional Zone" and created an exception to the "Median Barrier Not Required" category for "Adverse Accident Experience." The 1977 matrix was reduced to contain only "Warranted" and "Optional" categories. In 1996, the current categorical regime was adopted. It includes three categories: (1) "Evaluate Need for Barrier," (2) "Barrier Optional," and (3) "Barrier Not Normally Considered."

[2]Ruzak obtained the I-80 collision reports pursuant to a public records request. *See generally* Utah Code Ann. § 63G-2-201 (LexisNexis Supp. 2012). Neither party disputes that this information is not discoverable or admissible as evidence under 23 U.S.C.A. § 409 (West Supp. 2013). *See Miller v. Utah Dep't of Transp.*, 2012 UT 54, ¶¶ 26 n.4, 28, 285 P.3d 1208 (confirming that section 409 protects any information an agency generates for the purposes of developing any highway safety project). Despite the information's inadmissibility, the Pagets maintain that Ruzak

(continued...)

incorrectly stated that the median width at the crash site was only 16 feet, and his affidavit incorrectly stated that the road grade at the crash site was 6%.[3] In both his report and affidavit, Ruzak concluded that a median barrier should have been constructed at the crash site and that UDOT's mere reliance on AASHTO's "optional" recommendation was unreasonable. While Ruzak did not believe that UDOT's compliance with the AASHTO standard was, without more, enough to be appropriately considered reasonable, Ruzak admitted in his deposition that he was unaware of any other scientifically accepted standard that supported his assertions.

¶5     After reviewing both experts' opinions, the district court found that UDOT's decision not to construct a median barrier at the crash site complied with the AASHTO standard and was therefore reasonable. The district court also found that the Pagets had failed to make the required "threshold showing" that Ruzak's opinions were reliable. The court specifically emphasized that Ruzak relied on "vague and/or inadmissible data" and did not support his opinion with any published standard that was accepted by the relevant expert community. The court excluded Ruzak's opinion and, based on the lack of "evidence that UDOT's design of I-80 fell below a recognized standard of care," granted summary judgment for UDOT. The Pagets now appeal.

---

[2](...continued)
did not intend on testifying about it at trial, as evidenced by the fact that his affidavit makes no reference to the information. While the Pagets are correct that Ruzak's *affidavit* does not mention or rely on this protected information, his *report* both discusses and relies on the information contained in the collision reports. Thus, it is fair to infer that Ruzak's ultimate conclusions relied at least in part on this inadmissible information.

[3]Neither party disputes the accuracy of Alcorn's measurements of the median's width or the highway's grade at the site of the accident.

## ISSUES AND STANDARDS OF REVIEW

¶6    The Pagets first argue that the district court erred in excluding Ruzak's testimony as unreliable under rule 702 of the Utah Rules of Evidence. We review a district court's exclusion of expert testimony for an abuse of discretion, and we will disturb that exclusion "only when it exceeds the limits of reasonability." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 16, 269 P.3d 980 (citation and internal quotation marks omitted).

¶7    The Pagets also argue that the district court improperly granted summary judgment in favor of UDOT because the decision not to construct a median barrier at the crash site was unreasonable, regardless of whether UDOT complied with the AASHTO standard. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Eagar v. Burrows*, 2008 UT 42, ¶ 13, 191 P.3d 9. We review a district court's legal conclusions and ultimate grant of summary judgment for correctness. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

## ANALYSIS

### I. Admissibility of Expert Testimony

¶8    The Pagets contend that Ruzak's testimony was erroneously excluded because rule 702 of the Utah Rules of Evidence, as explained in our decision in *Gunn Hill Dairy Properties, LLC v. Los Angeles Department of Water & Power*, 2012 UT App 20, 269 P.3d 980, requires a proponent of expert testimony to make only a minimal "threshold showing" of reliability. *See id.* ¶ 33. They reason that Ruzak's qualifications as an engineer, coupled with his consideration of factors not taken into account by the AASHTO standard, satisfies the requisite "threshold showing."

¶9 Trial court judges have a responsibility to function as "gatekeeper[s]" to "screen out unreliable expert testimony." Utah R. Evid. 702 advisory committee note. *See Gunn Hill*, 2012 UT App 20, ¶ 28. While this gatekeeping function "marks only the beginning of a reliability determination," a trial court must ensure that a proponent of expert testimony has made a "threshold showing" of reliability before it allows the trier of fact to make an ultimate reliability determination. *See id.* ¶ 33 (emphasis omitted). "That 'threshold' requires only a *basic foundational showing of indicia of reliability* for the testimony to be admissible." Utah R. Evid. 702 advisory committee note (emphasis added).

¶10 It is often the case that experts will employ competing principles or methodologies that lead to inconsistent opinions and recommendations. *See id.* The mere fact that the opinions are inconsistent does not mean that one or the other is unreliable. *Id.* It is quite possible that two competing and inconsistent expert opinions will both contain the necessary indicia of reliability—the quintessential example being where two competing methodologies are both generally accepted by the relevant expert community—and the advisory committee note to rule 702 explains that differing yet reliable opinions should be admitted and then reconciled by the finder of fact. *Id.*

¶11 However, an opinion based on principles or methodologies that are not generally accepted by the relevant expert community or that offers an unconventional perspective does not meet the necessary threshold simply because that opinion was rendered by a qualified expert. *See Gunn Hill*, 2012 UT App 20, ¶ 30 (explaining that rule 702 requires a bifurcated analysis of admissibility and that a reliability determination under rule 702(b) is separate and distinct from an assessment of the expert's qualifications under rule 702(a)). On the contrary, when an expert opinion is based on principles or methodologies that are not generally accepted in the relevant expert community, a proponent of that opinion can meet the requisite "threshold showing" only by demonstrating other indicia of reliability. *See* Utah R. Evid. 702 advisory committee note (noting that a failure to show general acceptance in the relevant expert

community does not make the opinion inadmissible but does require that the threshold be satisfied by "other means"). Accordingly, if an expert opinion is not based on generally accepted principles or methodologies and is also devoid of other indicia of reliability, a trial court is well within its gatekeeping discretion to exclude the proposed testimony. *See id.*

¶12 We conclude that the district court did not abuse its gatekeeping function by excluding Ruzak's proposed testimony. The AASHTO standards are generally accepted as the benchmark for designing and constructing highways in Utah. By his own admission, Ruzak is not aware of a generally accepted standard that substantiates his recommendation to go above and beyond or deviate from the AASHTO guidelines, and the Pagets have not pointed to one. Therefore, Ruzak's methodology is not based on a generally accepted standard, and it was incumbent upon the Pagets to provide other indicia demonstrating the reliability of his methodology.

¶13 Given the record before us, Ruzak's methodology appears almost completely devoid of any such indicia of reliability. While Ruzak endorses a methodology that considers "changes in elevation, roadway curvature, frequency of adverse weather conditions, etc.," Ruzak himself did not travel to the crash site, did not take his own measurements, and—most problematically—relied on incorrect measurements in both his report and affidavit. Moreover, Ruzak's report analyzes and relies on evidence that is inadmissible under 23 U.S.C.A. § 409 (West Supp. 2013), and his affidavit sandwiches numerous vague and conclusory statements around a lone explanatory assertion that a median barrier was warranted because of I-80's "geometric features" and its "six percent downgrade."[4]

¶14 The Pagets point to UDOT's Roadway Design Manual of Instruction as support for Ruzak's belief that UDOT "should have

---

[4]As previously mentioned, the actual downgrade at the crash site is around 2%.

done more than simply rely on AASHTO."[5] All they point out, however, is that the manual notes that under some circumstances UDOT will need to augment or change the AASHTO standards.

---

[5]The Pagets also point to *Miller v. Utah Department of Transportation*, 2012 UT 54, 285 P.3d 1208, and UDOT's construction of a median barrier at the crash site subsequent to the accident as indicia of reliability. They argue that in *Miller*, the Utah Supreme Court questioned the sufficiency of the AASHTO standard and consequently "beg[ged] the question of whether AASHTO alone is 'safe.'" *Miller*, however, does not discuss AASHTO at all and merely reaffirms the longstanding principle that "the government's duty of care to maintain road safety is susceptible to general tort analysis." *Id.* ¶ 46. Furthermore, *Miller* does not in any way address the reliability of Ruzak's methods for determining whether a median barrier should have been constructed.

Similarly, UDOT's subsequent decision to construct a median barrier cannot function as an indicator of reliability because it is a classic example of an inadmissible subsequent remedial measure. *See* Utah R. Evid. 407. The Pagets claim that the evidence can function to prove the reliability of Ruzak's testimony, which is akin to showing the "feasibility of precautionary measures." *Id.* This claim fails for two reasons. First, Ruzak's opinion was not that a barrier was feasible but rather that a barrier was necessary, and that opinion was based on a methodology that deviates from the generally accepted methodology in the relevant expert community. Moreover, the feasibility of building a median barrier is only tangentially related to the reliability of an expert's method for determining when a barrier is necessary. Second, the subsequent construction of a barrier does not show that Ruzak's methodology is reliable, because there is no proof that UDOT's decision to construct a barrier was based on his methodology. And, as discussed in more detail below, UDOT's decision to finally install a barrier may simply have been premised on AASHTO's "Barrier Optional" classification.

This suggestion that AASHTO is not an end-all solution and may need to be modified in certain situations does not specifically refer to AASHTO's median barrier requirements, and it certainly is not an endorsement of Ruzak's alternative methodology.

¶15 In sum, Ruzak's opinion is based on evaluations that contain incorrect measurements and inadmissible data. The Pagets have not pointed to any generally accepted standard that substantiates his methods, and they have failed to provide any other indicia that his proposed testimony is reliable. We conclude that the district court properly excluded his testimony.

## II. Summary Judgment

¶16 Even in a case, unlike this one, where a party opposed to a motion for summary judgment "'submits no documents in opposition, the moving party may be granted summary judgment *only . . . if he is entitled to judgment as a matter of law.*'" *Ward v. Graydon*, 2011 UT App 358, ¶ 15, 264 P.3d 764 (emphasis and omission in original) (quoting *Olwell v. Clark*, 658 P.2d 585, 586 (Utah 1982)). "A summary judgment movant must show both that there is no material issue of fact *and* that the movant is entitled to judgment as a matter of law." *Orvis v. Johnson*, 2008 UT 2, ¶ 10, 177 P.3d 600 (emphasis in original). UDOT contends that once Ruzak's testimony is excluded, the Pagets' claim fails as a matter of law and UDOT is entitled to summary judgment. We disagree. Regardless of whether Ruzak's testimony is excluded, summary judgment is not appropriate unless UDOT, as the moving party, has demonstrated that it is entitled to judgment as a matter of law. *See id.* Thus, we turn to the relevant standard of care and the report from Alcorn, UDOT's expert.

¶17 "[T]he government's duty of care to maintain road safety is susceptible to general tort analysis." *Miller v. Utah Dep't of Transp.*, 2012 UT 54, ¶ 46, 285 P.3d 1208. Therefore, the government has a duty to take reasonable measures to minimize or prevent unreasonable risks of foreseeable injury. *See id.* ¶¶ 43, 46 (upholding as a correct statement of UDOT's duty of care a jury

instruction asserting that UDOT had to exercise reasonable care, including "tak[ing] reasonable measures to minimize or prevent dangerous conditions that would create unreasonable risks of foreseeable injury to motorists"). To that end, UDOT has adopted the AASHTO standards as its guideline for the construction of roads and highways within the state.

¶18    The AASHTO Roadside Design Guide, as adopted by UDOT, contains standards and procedures for every facet of road construction and design. Chapter 6 of the guide, and specifically section 6.2, sets forth guidelines and recommendations for median barrier construction. These recommendations are generated through the use of a matrix, which factors in median width and projected average daily traffic volumes over a five-year span. The matrix is intended to provide guidance specifically for "median barriers on high-speed, controlled-access roadways that have relatively flat, traversable medians," and the applicable version of the matrix contains three recommendation categories: (1) Evaluate Need for Barrier, (2) Barrier Optional, and (3) Barrier Not Normally Considered. Section 6.2 does not contain any special guidance for evaluating whether a median barrier is necessary under the "Evaluate Need for Barrier" category, and it does not state under what circumstances a barrier will be considered under the "Barrier Not Normally Considered" category.[6] For the "Barrier Optional" category, which is the pertinent category for the crash site here, section 6.2 states that "a barrier is recommended only if there has been a history of cross-median crashes." Section 6.2 does not, however, provide any sort of target cross-median crash rate—as Alcorn himself points out—and it does not provide any guidance other than the rather broad phrase "history of cross-median crashes."

---

[6]Section 6.2 does discuss analogous median barrier requirements in Florida and California, but it does not specifically endorse those requirements or encourage highway designers to adhere to them.

¶19   AASHTO's tripartite median barrier recommendation scheme provides no guidance on whether and under what circumstances a median barrier should reasonably be installed, especially when a location falls within the "Barrier Optional" category. Other than the direction to consider the "history of cross-median crashes," the Roadside Design Guide does not provide any criteria whatsoever, and the categories on either side of this nebulous "Barrier Optional" category are of little help. On the one hand, if a barrier is "Not Normally Considered," the logical implication is that typically a barrier will not be necessary, but in atypical or abnormal circumstances it will be. Conversely, the "Evaluate Need For Barrier" category suggests, at the very least, that a barrier will not always be necessary—hence the need to evaluate its necessity. Unfortunately, the Roadside Design Guide does not state any factors or unusual circumstances that should be considered in evaluating necessity. Given the confusing nature of what should be the more predictable categories on either side of it, the "Barrier Optional" category appears to countenance little more than a free-for-all, affording highway designers carte blanche discretion to build or not to build barriers based, apparently, on little more than whim.

¶20   UDOT's decision not to construct a median barrier appears to be based solely upon section 6.2's unsatisfying matrix. And from what appears in his report, Alcorn's conclusion that a median barrier was not warranted at the crash site also stems purely from the crash site's "Barrier Optional" categorization. After entering the average daily traffic volume and median width into the matrix, and without any additional explanation or consideration of the crash site's "history of cross-median crashes," Alcorn arrived at the conclusion that a median barrier was "not warranted" when the road was designed or constructed and was "optional" at the time of the accident. His report does not list any factors, other than the matrix, that may have guided UDOT's actual decision not to build a barrier initially or later. More importantly, the report does not provide any meaningful analysis about whether the decision not to construct a barrier was reasonable. Instead, it merely recited that a barrier was "optional" at the time of the crash and then jumped

to the unexplained conclusion that a barrier was "not warranted." Indeed, the report's reasoning appears to be entirely circular: The AASHTO matrix defines the applicable standard of care, and because construction of a median at the crash site was optional, the standard was satisfied because UDOT opted not to construct a median. Such an approach, much like the matrix itself, begs the question of whether opting not to install a median barrier at the crash site was a reasonable choice even when taking into account the premise that the decision was optional rather than mandatory.

¶21    Without more, we are unconvinced that UDOT's decision not to construct a median barrier was reasonable as a matter of law. While we understand that, under AASHTO, the decision whether to erect a barrier was optional, both Alcorn and UDOT have wholly failed to explain why UDOT's decision was reasonable. UDOT seems to suggest that because a barrier was optional it would have been reasonable either to construct a barrier or not to construct a barrier. But without any sort of explanation as to how UDOT actually came to its decision, there is no way of knowing whether UDOT's decision was grounded in reasonable and prudent judgement or whether it all boiled down to something as arbitrary as a design engineer's mental flip of a coin.

¶22    AASHTO's rudderless median barrier requirements cannot, without more, serve as the standard of care by which the reasonable and prudent construction of highway median barriers is measured.[7] Because UDOT has failed to demonstrate anything

---

[7]The many other provisions within AASHTO may well provide reasonable and rational guidance for other aspects of highway construction and design, and this opinion is not intended as a wholesale criticism of the Roadside Design Guide. Rather, we take issue solely with section 6.2, which contains no rational guidance whatsoever and seemingly affords highway designers unfettered discretion in determining whether to construct median barriers. Such an arbitrary and unhelpful

(continued...)

other than that a median barrier was optional under AASHTO, it has failed in its burden to prove that its actions in selecting the option it did were reasonable as a matter of law and that it is entitled to judgment as a matter of law. We therefore conclude that the district court erred in granting summary judgment in favor of UDOT.

CONCLUSION

¶23 The district court properly excluded Ruzak's proposed testimony because his methods and principles were not based on a generally accepted standard in the relevant expert community, and the Pagets failed to provide any other indicia of his opinion's reliability. UDOT, however, was not entitled to summary judgment merely because Ruzak's testimony was properly excluded. As the moving party, UDOT was required to demonstrate that its decision not to construct a median barrier was reasonable as a matter of law. In basing its decision entirely on a standard that allows for seemingly arbitrary and potentially unreasonable actions, UDOT failed to demonstrate that it met the standard of care. We consequently reverse the district court's grant of summary judgment and remand for trial or such other proceedings as may now be in order.

———————

[7](...continued) standard cannot possibly stand alone as the relevant standard of care for median barrier construction.