2017 UT App 148

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CARL JOHN HOLM,
Appellant.

Opinion
No. 20150623-CA
Filed August 10, 2017

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 131905377

Richard G. Sorenson, Attorney for Appellant

Simarjit S. Gill and Peter D. Leavitt, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and KATE A. TOOMEY concurred.[1]

POHLMAN, Judge:

¶1     During his early morning commute Carl John Holm drove through a red traffic light and collided with an oncoming vehicle, fatally injuring the vehicle's passenger (Victim). Following a jury trial Holm was convicted of negligent homicide. On appeal Holm asserts that, during voir dire, the trial court should have permitted follow-up questioning of jurors who indicated they or someone close to them had been involved in a serious car accident. We conclude that the trial court

---

1. Judge J. Frederic Voros Jr. participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

exceeded its discretion by precluding such questioning, and we therefore reverse Holm's conviction and remand for a new trial.

BACKGROUND

*The Collision*

¶2    Holm was driving to work early one morning when he approached an intersection connecting Bangerter Highway with State Route 201. Holm failed to stop at a red traffic light, drove into oncoming traffic, and collided with a passing vehicle. Victim, who was a passenger in the vehicle, died at the scene. Holm was charged with negligent homicide, a class A misdemeanor. *See* Utah Code Ann. § 76-5-206 (LexisNexis 2012). He pleaded not guilty and elected to have the charge tried by a jury.

*Voir Dire*

¶3    During voir dire, the trial judge asked the pool of approximately thirty jurors to indicate if they personally "ha[d] ever been involved in a serious car accident." About one-third responded affirmatively. Holm's counsel then requested that the trial court "ask [the jurors] if anyone close to [them] ha[d] been involved in a serious car accident." The court responded with the concern that "everybody" would answer affirmatively, and the prosecution suggested limiting individual questioning to those prospective jurors who felt the "experience [would] affect [their] ability to be fair and impartial." The court agreed to do so, although Holm's counsel reiterated that he "would like to talk to everybody."

¶4    The trial court then asked the jurors whether anyone close to them had been involved in a serious car accident. Again, about one-third responded affirmatively. The court then asked, "Those of you [who] have been or know somebody close to you

[who] has been in a car accident, is there anything about that experience that makes you feel like you might be biased for one side or the other?" Four persons indicated they might feel such bias.

¶5      The court then began questioning jurors individually, primarily those who had indicated potential bias based on personal experience or the experience of someone close to them. Holm's counsel reiterated that he "would like to talk with every single person . . . [who had been] involved in a serious car accident or [whose] close friend was involved in a serious car accident[,] just to know the circumstances." The court stated that such questioning would involve "every single person" in the jury pool and noted that those who had indicated potential bias were being pulled in for questioning. Holm's counsel responded, "I would like to talk to them, but I understand the [c]ourt's ruling." The trial court later stated, "[I]f . . . everyone who has ever been in a car accident ends up stricken, we would not have enough people . . . . So those who said that they are not going to be biased about that, we're not going to talk to." Holm's counsel replied, "[F]or the record, the Defense would like to talk to them."

¶6      Of the four jurors who indicated potential bias, two were struck for cause, one was excluded via Holm's peremptory challenge, and the last was sufficiently deep in the jury pool that individual questioning was unnecessary. But a majority of the jurors selected for Holm's trial had indicated personal involvement or the involvement of someone close to them in a serious car accident. Because those jurors had not affirmatively disclosed potential bias, none was individually questioned on that subject.

*The Verdict*

¶7      The jury found Holm guilty of negligent homicide, and he was sentenced to a one-year term of imprisonment. He appeals.

ISSUE AND STANDARD OF REVIEW

¶8   Holm contends the trial court abused its discretion by denying him "the opportunity to conduct individual voir dire on potential jurors who indicated they or a close friend had been involved in a serious car accident." "We review a judge's decision imposing limits on voir dire questioning for an abuse of discretion." *State v. Reece*, 2015 UT 45, ¶ 16, 349 P.3d 712.[2]

ANALYSIS

¶9   Holm asserts the trial court exceeded its discretion by declining his "request to speak to each juror individually who indicated they or someone close to them had been involved in a serious car accident." He contends "[r]easonable and detailed inquiry into the circumstances surrounding the jurors' . . . experience with serious car accidents was necessary and imperative where it may have revealed a bias against someone who causes a car accident" and "would . . . have given [him] more information when exercising his right to peremptory challenges."

¶10   The purpose of voir dire is to detect actual bias and to facilitate the informed exercise of peremptory challenges. *Reece*, 2015 UT 45, ¶ 45. In achieving that objective, trial courts generally "should be permissive in allowing voir dire questions and should exercise their discretion in favor of allowing counsel to elicit information from prospective jurors." *Id.* (citation and internal quotation marks omitted).

---

2. Holm asserts additional bases for reversal, but we need not address those issues because we reverse Holm's conviction and remand for a new trial due to error in the trial court's handling of voir dire.

¶11 A trial court's discretion in limiting voir dire varies with the subject area and its connection to the proceeding. *See State v. Saunders*, 1999 UT 59, ¶ 43, 992 P.2d 951. "[T]rial courts have no obligation to permit every question that might disclose some basis for counsel to favor or disfavor seating a particular juror," *Reece*, 2015 UT 45, ¶ 45 (emphasis, citation, and internal quotation marks omitted), and they have broad discretion when declining inquiries that "unduly intrude[] into the jurors' private lives," *id.* (citation and internal quotation marks omitted), or "have no apparent link to any potential bias," *Saunders*, 1999 UT 59, ¶ 43.

¶12 But as proposed questions draw closer to probing potential bias, the court's discretion narrows, and when requested "voir dire questions go directly to the existence of . . . actual bias, [the court's] discretion disappears. The trial court must allow such inquiries." *Id.*; *see also State v. Boyatt*, 854 P.2d 550, 552 (Utah Ct. App. 1993) ("[T]he trial court must adequately probe a juror's potential bias when that juror's responses or other facts suggest a potential bias."). While a trial court need not ask every question requested on a given topic nor ask proposed questions in a particular manner, a trial court must, "considering the totality of the questioning," afford counsel "an adequate opportunity to gain the information necessary to evaluate the jurors." *Reece*, 2015 UT 45, ¶ 45 (citation and internal quotation marks omitted).

¶13 Here, the case centered on whether Holm was criminally liable for causing a fatal car collision. Holm sought to ask follow-up questions of jurors who indicated they had personally experienced a serious car accident or were close to someone who had—an inquiry relevant to uncovering actual bias, which also would have probed potential bias and would likely have generated data essential to counsel's informed exercise of peremptory challenges. In this context, the jurors' responses raised sufficient questions regarding potential bias to require the

trial court to permit further questioning along the lines Holm requested.[3] *See, e.g.*, *State v. King*, 2008 UT 54, ¶¶ 8, 19, 190 P.3d 1283 (characterizing jurors' indications that they or someone close to them had been the victim of a similar offense as "suggest[ing] potential bias"); *State v. King*, 2006 UT 3, ¶¶ 6, 24, 131 P.3d 202 (noting that jurors' indications that they or someone close to them had been the victim of a similar offense "would have been sufficient to support a request by counsel for additional questioning").

¶14   The trial court, however, merely inquired whether "anything about that experience" would lead the juror to "feel like [he or she] might be biased for one side or the other." None of the four persons who responded affirmatively served as a juror for Holm's trial. But a majority of the jurors ultimately seated had indicated personal involvement, or the involvement of someone close to them, in a serious car accident; none had been questioned in that regard; and despite Holm's request, no other questions were asked to elicit additional details in that respect.

¶15   "Ruling that a prospective juror is qualified to sit simply because he says he will be fair ignores the common-sense psychological and legal reality" that jurors may not independently recognize their biases and also know little about the case and thus "cannot anticipate how [they] will react when

---

3. We are troubled by the trial court's implicit suggestion that it would avoid asking questions that might lead to the discovery of bias among a high percentage of the jury pool. Regardless of whether the subject matter is a common one, and recognizing that some cases may require a greater number of individualized inquiries than others, a trial court remains obligated to carry out voir dire in a manner consistent with detecting actual bias and facilitating the informed exercise of peremptory challenges.

asked to decide a case once all the facts are known." *State v. Saunders*, 1999 UT 59, ¶ 35, 992 P.2d 951. Indeed, the "most characteristic feature of prejudice is its inability to recognize itself. It is unrealistic to expect that any but the most sensitive and thoughtful jurors (frequently those least likely to be biased) will have the personal insight, candor and openness to raise their hands in court and declare themselves biased." *State v. Ball*, 685 P.2d 1055, 1058 (Utah 1984).

¶16 Thus, a juror's statement professing ability to fairly apply the law as "given by the trial court is not a sufficient basis for qualifying a juror to sit when the prospective juror's answers provide evidence of possible bias and the trial court does not allow further questions designed to probe the extent and the depth of the bias." *Saunders*, 1999 UT 59, ¶ 36. In this case, the trial court's follow-up question rested on the self-awareness and self-reporting of bias on a matter "directly related to the offense[] for which [Holm] was convicted," for which no "specific follow-up question[s]" were permitted, on topics that did not appear to be "deeply personal." *Cf. State v. Reece*, 2015 UT 45, ¶¶ 51–55, 349 P.3d 712 (concluding that the trial court did not exceed its discretion by asking whether jurors could be fair and impartial in lieu of other questions, where the topic was not directly related to the offenses of conviction, the court did not prevent follow-up questioning, and the subject matter was deeply personal). That inquiry was insufficient. *Cf. King*, 2008 UT 54, ¶¶ 8, 19; *King*, 2006 UT 3, ¶¶ 6, 24.

¶17 Yet "our inquiry does not end once we have established that the trial court" exceeded its discretion in unduly limiting the scope of voir dire. *Alcazar v. University of Utah Hosps. & Clinics*, 2008 UT App 222, ¶ 15, 188 P.3d 490. "[A]ny error made at voir dire must be prejudicial to require reversal," *Depew v. Sullivan*, 2003 UT App 152, ¶ 27, 71 P.3d 601, and "[p]rejudicial error is shown if the appellant's right to the informed exercise of peremptory challenges has been substantially impaired," *Barrett*

*v. Peterson*, 868 P.2d 96, 103 (Utah Ct. App. 1993) (citation and internal quotation marks omitted).[4]

¶18 Here, the requested questions addressed jurors' experiences and the experiences of persons close to them in serious car collisions—this was the type of event for which Holm was on trial; a majority of the jurors who decided Holm's guilt acknowledged such experience; no follow-up questions were permitted, and no further details regarding those experiences were obtained during voir dire. As noted above, the entirety of the trial court's permitted questioning on the subject relied on jurors personally identifying and acknowledging potential or actual bias—an inadequate inquiry that left Holm "without the necessary information . . . to ferret out a potential juror's actual

---

4. We apply the substantial impairment test here, as we have in prior cases. *See, e.g.*, *Alcazar v. University of Utah Hosps. & Clinics*, 2008 UT App 222, ¶ 15, 188 P.3d 490; *Barrett v. Peterson*, 868 P.2d 96, 103–04 (Utah Ct. App. 1993). We acknowledge, however, that Utah appellate courts have taken different approaches when assessing whether error was prejudicial in similar contexts. *See, e.g.*, *State v. Mead*, 2001 UT 58, ¶ 34, 27 P.3d 1115 (concluding that the trial court's failure to allow follow-up questions as to prior knowledge of the case was not reversible error because the appellant had failed to "proffer[] evidence that media reports . . . could have unfavorably biased potential members of the jury"); *State v. Saunders*, 1999 UT 59, ¶ 55, 992 P.2d 951 (plurality opinion) (reversing on the basis of cumulative error, due in part to the trial court's "undue limitations on voir dire questions"); *Depew v. Sullivan*, 2003 UT App 152, ¶¶ 30, 34, 71 P.3d 601 (concluding that the trial court's failure to conduct a full voir dire inquiry was prejudicial where it did "not seem unlikely that one or more jurors would have been excused for cause"). But the formulation of the standard does not dictate the outcome here; under the circumstances, reversal is plainly required.

bias or to intelligently exercise peremptory challenges, thus prejudicing [him]." *See Alcazar*, 2008 UT App 222, ¶ 18. In light of the dearth of information available to Holm on these issues, his right to the informed exercise of peremptory challenges was significantly impaired, *see id.* ¶¶ 18–19, and we therefore reverse his conviction and remand for a new trial.

## CONCLUSION

¶19 Because the trial court exceeded its discretion by denying Holm's request for follow-up questioning during voir dire, we reverse Holm's conviction and remand for a new trial.

―――――――