2019 UT App 196

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PETER RAMIREZ,
Appellant.

Amended Opinion[1]
No. 20180268-CA
Filed: November 29, 2019

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 161907546

Sarah J. Carlquist, Attorney for Appellant

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN FORSTER
concurred.

HAGEN, Judge:

¶1    A jury convicted Peter Ramirez of aggravated assault resulting in serious bodily injury stemming from an incident in which he struck another person in the face with an aluminum baseball bat. On appeal, Ramirez argues that he received ineffective assistance of counsel with respect to his mistaken-identity defense. Specifically, he claims that his

---

1. This amended opinion replaces the opinion issued October 31, 2019, *State v. Ramirez*, 2019 UT App 176. In response to Appellant's petition for rehearing, revisions were made to footnote 3, now footnote 4.

defense counsel performed ineffectively by failing to (1) call an eyewitness identification expert, (2) request a cautionary instruction regarding eyewitness testimony, and (3) move to suppress three eyewitnesses' in-court identifications of Ramirez. Because his conviction is supported by overwhelming evidence, there is no reasonable probability that the jury would have acquitted Ramirez even if his defense counsel had successfully taken those actions. Accordingly, Ramirez has not demonstrated that he was prejudiced by any alleged deficiencies in his defense counsel's performance.

¶2 Ramirez also seeks remand under rule 23B of the Utah Rules of Appellate Procedure to supplement the record with evidence related to defense counsel's alleged failure to investigate a potential alibi defense. Because Ramirez has not provided adequate nonspeculative facts in support of his motion, we deny the rule 23B motion. Accordingly, we affirm his conviction.

BACKGROUND[2]

¶3 Late one night, the victim, the victim's now-wife, and their friend (collectively, the eyewitnesses) were watching street races in Salt Lake City. Although it was near midnight, the area was well-lit by the moon, nearby street lamps, and headlights from dozens of cars in the area.

¶4 As the eyewitnesses waited for the races to begin, Ramirez pulled up in a dark-colored Ford Fusion and parked

___

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

where the eyewitnesses had been standing, forcing them to move out of the car's way. Ramirez exited his vehicle and told the group, "[G]et the fuck off my car." The victim's friend, thinking that Ramirez was joking, said, "[D]ude, we're not on your car." Ramirez responded, "[O]h, you guys think this is fucking funny?" and then returned to his car. The eyewitnesses thought the altercation was over and resumed watching the street races.

¶5      But Ramirez returned from his car moments later carrying an aluminum baseball bat. He swung the bat, striking the victim in the face "as hard as he could." The victim fell to the ground, and his wife and the friend carried him away from Ramirez to safety. While carrying the victim to a safe location, the friend took note of the Ford Fusion's license plate number, later recording it on his phone. Ramirez remained by his car "for a minute" after the attack before leaving. Shortly thereafter, one of the eyewitnesses called the police and emergency medical personnel.

¶6      An ambulance transported the victim to a hospital where each of the eyewitnesses were interviewed by police. They all gave a similar description of the attacker: an adult Hispanic male, about 6' 2" tall, weighing around 230 pounds, with a long black beard, and wearing a black hat and an oversized black t-shirt. They also provided a description of the attacker's car, including its color and specific make and model.

¶7      In addition to the eyewitnesses' physical description of the attacker and his vehicle, the friend also gave the police the license plate number that he had recorded on his phone. However, the officer recognized that it was not a valid Utah license plate number because it had the wrong combination of letters and numbers. When the officer informed the friend that the license plate number was invalid, the friend pointed out one

character and told the officer that if any of the numbers or letters were wrong, it had to be that one.

¶8     Using that information, the officer ran a license plate search by substituting different numbers or letters for the one character in which the friend lacked confidence. Using this method, he found a black Ford Fusion that matched five of the six characters in the license plate number the friend had recorded. The car was registered to Ramirez's father, who did not match the eyewitnesses' physical descriptions of the attacker. But police discovered a separate case involving the car that was associated with Ramirez. The officer retrieved Ramirez's driver license photo and found that it matched the eyewitnesses' descriptions.

¶9     At 4:30 a.m., several hours after the attack, the officer went to the address associated with the car's registration. He saw the black Ford Fusion backed into a carport on the side of the house. The car was missing its front license plate, but the rear license plate matched the number that the officer had found in his search. The officer knocked on the door of the house and was invited inside where he met Ramirez. According to the officer, Ramirez "matched [the eyewitnesses' descriptions] literally to the T" and was still wearing the oversized black t-shirt that the eyewitnesses had described.

¶10    Upon observing how closely Ramirez matched the eyewitnesses' descriptions, the officer immediately handcuffed Ramirez and sat him down on the curb outside the house. The officer read Ramirez his *Miranda*[3] rights and informed him that he was under arrest for aggravated assault. Ramirez then

---

3. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (listing warnings that law enforcement officers must give to criminal suspects prior to custodial interrogation).

responded, "[I]f I get convicted of this I'm going to prison." The police never found the baseball bat used in the attack.

¶11    Ramirez was ultimately charged with aggravated assault resulting in serious bodily injury, a second-degree felony. At trial, the eyewitnesses each identified Ramirez as the attacker without objection from defense counsel.[4] Each of the eyewitnesses also testified that the lighting was sufficient for them to have had a clear look at Ramirez on the night of the attack. All of the eyewitnesses also expressed confidence that the car Ramirez had driven on the night of the attack was a dark-colored Ford Fusion. Ramirez testified in his own defense. Although he claimed that he was at a club with several friends on the night of the attack, Ramirez admitted to driving his parents' Ford Fusion on occasion.

¶12    Before closing arguments, the parties and the district court finalized the jury instructions. Defense counsel did not request any specific instructions. Following closing arguments and deliberations, the jury convicted Ramirez. He now appeals.

ISSUES AND STANDARDS OF REVIEW

¶13    Ramirez argues that he received ineffective assistance of counsel because his defense counsel did not do more to challenge the eyewitnesses' testimony identifying him as the attacker. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling

---

4. For at least two of the eyewitnesses, this was the first time they specifically identified Ramirez as the attacker. The victim's friend testified that the officer had shown him a picture of Ramirez at the hospital and that he had identified Ramirez at that time, but the officer testified that he did not recall showing him Ramirez's picture.

to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Crespo*, 2017 UT App 219, ¶ 22, 409 P.3d 99 (cleaned up). Ramirez has also filed a rule 23B motion for a remand to supplement the record with evidence regarding his defense counsel's alleged failure to investigate and call a potential alibi witness. *See* Utah R. App. P. 23B. "A remand under rule 23B is available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Crespo*, 2017 UT App 219, ¶ 24 (cleaned up).

## ANALYSIS

### I. Ineffective Assistance of Counsel

¶14 To prevail on an ineffective assistance of counsel claim, a defendant must establish both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address a defendant's claims under either prong." *State v. Torres*, 2018 UT App 113, ¶ 14, 427 P.3d 550 (cleaned up). Here, we need not decide whether Ramirez's defense counsel performed deficiently because he has not established the second prong, prejudice.

¶15 According to Ramirez, "[t]he eyewitness identifications in this case constituted the linchpin of the prosecution's case." Therefore, it was critically important for his counsel to present a strong mistaken-identity defense. Ramirez argues that his defense counsel was ineffective for failing to take three actions related to a mistaken-identity defense: (1) calling an eyewitness expert to testify regarding factors present in this case that could make the eyewitnesses' identifications less reliable; (2)

requesting a cautionary instruction to "sensitize the jury to the factors that empirical research have shown to be of importance in determining the accuracy of eyewitness identifications," *State v. Long*, 721 P.2d 483, 492 (Utah 1986); and (3) objecting to the admissibility of the eyewitnesses' in-court identifications of Ramirez.

¶16 Even in the unlikely event that defense counsel would have succeeded in excluding the eyewitnesses' in-court identifications or in persuading the jury to entirely disregard those identifications through expert witness testimony or a cautionary instruction, the remaining evidence overwhelmingly established Ramirez's identity as the attacker. In the immediate aftermath of the attack, each of the eyewitnesses provided consistent descriptions of the attacker to police. The descriptions included identifiers such as race, gender, age, height, weight, clothing, and a "distinct and unique black beard," all of which matched Ramirez "to the T."

¶17 The eyewitnesses also described the vehicle that the attacker was driving as a dark-colored Ford Fusion, and Ramirez admitted to occasionally driving his parents' car matching that description. The license plate on the Ford Fusion that Ramirez drove matched five of the six characters given to police as the attacker's license plate number, and the one character that did not match corresponded with the one character that the witness indicated may have been recorded incorrectly.

¶18 Within hours of the attack, police found the Ford Fusion with the matching license plate backed into a carport in a manner that concealed its single, rear license plate from view. Ramirez was located in the house still wearing the same shirt worn during the attack, as accurately described by the eyewitnesses. Upon his arrest, Ramirez volunteered an arguably

incriminating statement, telling the officer, "[I]f I get convicted of this I'm going to prison."

¶19    In short, even if defense counsel had called an expert witness, requested a cautionary instruction, or successfully objected to the in-court identifications, there is no reasonable probability that the jury would have believed that a different person matching Ramirez's unique description and driving the same car with the same license plate number committed the crime. Because Ramirez cannot establish a reasonable probability that the alleged deficiencies in defense counsel's performance affected the jury's verdict, his ineffective assistance of counsel claim fails for lack of prejudice.

## II. Rule 23B Motion

¶20    Ramirez has also filed a rule 23B motion for remand to supplement the record with evidence that his defense counsel failed to investigate and call a potential alibi witness. "A remand under rule 23B is available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Crespo*, 2017 UT App 219, ¶ 24, 409 P.3d 99 (cleaned up). Ramirez's rule 23B motion does not satisfy these conditions.

¶21    Through an affidavit, Ramirez claims that he was with his friend (the alibi witness) at a club on the night of the attack. He also claims that he told his defense counsel about the alibi witness and that, "to [his] knowledge," defense counsel did not contact the alibi witness or otherwise investigate the alibi defense. But he does not offer sufficient nonspeculative facts showing that defense counsel did nothing to investigate the advisability of calling the alibi witness. In a separate affidavit, the alibi witness indicates that if he had been called as a witness at trial, he would have testified that he and Ramirez were at a club together on the night in question. However, the alibi

witness does not indicate whether defense counsel ever contacted him about his potential testimony.

¶22   Even accepting the affidavits at face value, they do not overcome the strong presumption that defense counsel exercised reasonable professional judgment in assessing the viability of an alibi defense. *See Burke v. State*, 2015 UT App 1, ¶ 18, 342 P.3d 299 (holding that there is a "strong presumption that counsel rendered constitutionally sufficient assistance" when reviewing the alleged failure of trial counsel to investigate an alibi defense (cleaned up)). The affidavits do not establish whether defense counsel contacted the alibi witness or otherwise investigated the veracity of Ramirez's claim that he was at a club at the time of the attack. Thus, the allegation that defense counsel failed to adequately investigate and pursue the alibi defense is mere speculation and Ramirez is not entitled to a Rule 23B remand. Because he is not entitled to a remand, Ramirez's second claim of ineffective assistance of counsel necessarily fails.[5]

## CONCLUSION

¶23   Given the other overwhelming evidence identifying Ramirez as the attacker, Ramirez is unable to show that he was prejudiced by his counsel's alleged deficient performance in failing to mount additional challenges to the eyewitnesses'

---

5. As part of his rule 23B motion, Ramirez also requests a remand to supplement the record with an eyewitness identification expert's proffered testimony. As with the alibi witness, Ramirez has not alleged nonspeculative facts as to whether his defense counsel consulted with or considered calling an eyewitness expert. In any event, we have already determined that he cannot show prejudice from the failure to call an expert, *see supra* ¶¶ 16–19, and Ramirez is therefore not entitled to a remand.

in-court identifications. Further, Ramirez has not alleged sufficient nonspeculative facts in support of his rule 23B motion to remand, and we therefore deny that motion. Accordingly, we affirm his conviction for aggravated assault resulting in serious bodily injury.

———————