2020 UT App 96

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CARL JOHN HOLM,
Appellant.

Opinion
No. 20190282-CA
Filed June 18, 2020

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 131905377

Amy V. Powers, Attorney for Appellant

Simarjit S. Gill and Kent F. Davis,
Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1　Carl John Holm sped through a red light and caused a car crash that resulted in the death of a young man. A jury convicted Holm of negligent homicide. Holm now challenges his conviction, arguing that the district court abused its discretion by (1) binding his counsel to stipulations entered into by his former counsel at a previous trial, (2) admitting into evidence an unfairly prejudicial photograph of the victim's body, and (3) denying his request for a jury instruction defining simple negligence. He also argues that the court (4) erred in denying his motion for directed verdict because the State presented insufficient evidence to establish that he acted with criminal negligence. We reject his arguments and affirm.

## BACKGROUND[1]

### *The Crash*

¶2     One morning in September 2012, Holm was running late for his 6:00 a.m. work shift. He sped down Bangerter Highway in his minivan—reaching speeds between 70 and 90 mph in a 50-mph zone—and swerved in and out of multiple lanes. Although it was early morning and the sun had not yet risen, Holm drove with his minivan's headlights turned off.

¶3     As Holm approached an intersection, he did not look at the traffic light for at least ten seconds, during which time it turned red. Still speeding at more than 70 mph,[2] Holm did not notice the red light until just before he entered the intersection.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Ramirez*, 2019 UT App 196, n.2, 455 P.3d 1082 (cleaned up).

2. The record contains conflicting testimony regarding Holm's speed at the time of the collision. On appeal, Holm argues that we should view the record as establishing that he was driving 50 mph when the crash happened because the State's own expert posited as much (although the expert later acknowledged that Holm could have been going as fast as 60 mph). But a lay witness testified that Holm was driving faster than 70 mph at the time of the crash. *See Fowkes v. J.I. Case Threshing Mach. Co.*, 151 P. 53, 55 (Utah 1915) ("No doubt a lay witness, experienced with, or accustomed to observe, moving objects, may give his opinion as to the speed of an automobile."). And on appeal, we view the evidence in the light most favorable to the jury's verdict. *See supra* note 1.

As he entered the intersection, Holm realized that he was going to crash into another vehicle but did not brake or swerve in an attempt to avoid the collision.

¶4 Holm's minivan smashed into the other vehicle. A young man (the victim) sitting in the front passenger seat of the other vehicle died in the crash, having suffered a fatal injury to his pulmonary artery caused by blunt force trauma to his chest.

*Holm's First Trial and Appeal*

¶5 The State charged Holm with negligent homicide. Before his first trial, Holm filed a motion to exclude a photograph that showed the victim receiving medical care while still inside the wrecked vehicle. Holm argued that the photograph was "gruesome" and inadmissible under rule 403 of the Utah Rules of Evidence. The district court disagreed and determined that the photograph was admissible.

¶6 Both before and during Holm's first trial, the parties entered into ten stipulations accepted by the district court. Those stipulations were:

> 1. No evidence would be presented that Holm had drugs in his blood or vehicle;
>
> 2. No evidence would be presented that Holm had outstanding warrants on the day of the accident;
>
> 3. No evidence would be presented that the driver of the other vehicle had controlled substances in his system at the time of the accident;
>
> 4. No evidence would be presented that Holm's driver license was suspended on the day of the accident;

5. That the occupants of the other vehicle have no memory of the collision and would not be called as witnesses;

6. That a picture of the victim—taken while he was still alive—was authentic;

7. That there was an unbroken chain of custody of the victim's body between the scene of the collision and the medical examiner's office;

8. That Holm's blood was tested and no alcohol or controlled substances were found;

9. That the intersection where the accident occurred had not been changed from the date of the accident and the time that a photograph of the intersection used as an exhibit was created; and

10. That an emergency medical technician who responded to the crash did have contact with Holm's minivan but did not touch its headlight switch.

¶7 After the close of evidence, Holm asked the district court to instruct the jury on simple negligence. But the court denied that request, ruling that the requested instruction was both confusing and duplicative of the instruction defining criminal negligence, which already discussed "ordinary negligence."

¶8 The jury found Holm guilty of negligent homicide. But this court reversed Holm's conviction for reasons unrelated to his current appeal, and the case was remanded for retrial. *See generally State v. Holm*, 2017 UT App 148, 402 P.3d 193.

*Holm's Second Trial*

¶9  On remand, Holm was represented by new counsel, and a different judge presided over his case. The district court heard motions on a number of issues, including: (1) whether, as Holm contended, the ten stipulations accepted in the previous trial were unenforceable pursuant to rule 28 of the Utah Rules of Criminal Procedure; (2) Holm's request to exclude the photograph of the victim's body; and (3) Holm's request for a jury instruction defining simple negligence.

¶10  The district court rejected Holm's argument that, on retrial, previous stipulations are "wiped away" to allow new counsel freedom to develop a new trial strategy. The court determined that the stipulations had been accepted by the judge presiding over Holm's first trial and that "the law of the case still govern[ed]."[3] It further reasoned that "stipulations are like contracts and should be enforced as such."

¶11  The district court also denied Holm's motion to exclude the photograph of the victim's body and his request for a jury instruction defining simple negligence. It found that those issues were decided by the judge presiding over Holm's first trial and, therefore, were "settled under the law of the case." And while the court recognized that it had the discretion "to reconsider any issue which was not expressly or impliedly disposed of on appeal," it determined that Holm had "not provided any reason why the Court should reconsider its prior rulings."

---

3. "Under the law of the case doctrine, a court may decline to revisit issues within the same case once the court has ruled on them." *McLaughlin v. Schenk*, 2013 UT 20, ¶ 22, 299 P.3d 1139 (cleaned up).

¶12    Holm's second trial proceeded as scheduled. At the close of the State's case, Holm moved for a directed verdict, arguing that the State had not "put on sufficient evidence" such that "a reasonable jury [could] find Mr. Holm guilty of criminal or negligent homicide." The district court denied his motion. At the end of trial, the jury again found Holm guilty of negligent homicide. Holm now appeals that conviction.

ISSUES AND STANDARDS OF REVIEW

¶13    Holm challenges his conviction on four grounds. First, he argues that the district court abused its discretion when it enforced all the stipulations accepted by the court before and during the first trial. "A district court's decision to enforce a stipulation is reviewed for an abuse of discretion." *State v. Beckstrom*, 2013 UT App 186, ¶ 12 n.5, 307 P.3d 677 (cleaned up).

¶14    Second, Holm argues that the district court abused its discretion under rule 403 of the Utah Rules of Evidence by admitting a "graphic" photograph of the victim's body into evidence. We review "the admission of allegedly gruesome photographs for an abuse of the district court's discretion." *Met v. State*, 2016 UT 51, ¶ 36, 388 P.3d 447.

¶15    Third, Holm argues that the district court erred when it denied his request for a jury instruction defining simple negligence. "We review a district court's refusal to give a jury instruction for abuse of discretion." *Miller v. Department of Transp.*, 2012 UT 54, ¶ 13, 285 P.3d 1208.[4]

---

4. Holm also appears to argue that the district court erred by concluding that both issues regarding admission of the photograph and his requested jury instruction were settled by

(continued…)

¶16 Lastly, Holm argues that the district court erred when it denied his motion for directed verdict because there was insufficient evidence that he was criminally negligent. "We review the district court's denial of a motion for directed verdict for correctness." *State v. Barner*, 2020 UT App 68, ¶ 9 (cleaned up). But because Holm "challenges the denial of a motion for directed verdict based on the sufficiency of the evidence, the applicable standard of review is highly deferential." *See id.* (cleaned up). "We will uphold the district court's denial if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime have been proven beyond a reasonable doubt." *Id.* (cleaned up).

## ANALYSIS

### I. Stipulations on Remand

¶17 Holm contends that the district court abused its discretion by enforcing stipulations that were entered into during his first trial by prior counsel. He bases this argument on rule 28 of the Utah Rules of Criminal Procedure, which, in relevant part, instructs that a defendant is to be retried if his or her "judgment of conviction is reversed" on appeal. Utah R. Crim. P. 28(a).

---

(…continued)

the law of the case. But that was not the only basis for the court's rulings. Rather, the court recognized that it had discretion "to reconsider any issue which was not expressly or impliedly disposed of on appeal." But it also determined that Holm had "not provided any reason why the Court should reconsider its prior rulings." Thus, the court endorsed the reasoning behind the rulings from the first trial, and we review whether the court abused its discretion in doing so.

Holm contends that to properly interpret and apply rule 28, we must read into it a provision from rule 24 that states, "If a new trial is granted, the party shall be in the same position as if no trial had been held . . . ." *Id.* R. 24(d). The application of that provision, according to Holm, nullified the stipulations entered into at his first trial when his conviction was reversed on appeal.

¶18    We need not decide whether stipulations are binding on remand for a new trial because we conclude that Holm has not demonstrated that the district court's error, if any, prejudiced him. *See id.* R. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."); *see also State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (explaining that whether a district court abused its discretion in denying a defendant's motion for a continuance depends on whether a prosecutor's violation of the Utah Rules of Criminal Procedure "resulted in prejudice sufficient to warrant reversal").

¶19    The stipulations at issue were evidentiary and factual in nature—Holm had not stipulated to elements of the offense or otherwise reduced the State's burden to prove each element beyond a reasonable doubt. Holm offers no argument that any of the stipulations were incorrect or that the State would have been unable to prove the stipulated facts through live testimony if the stipulations had not been enforced. For example, stipulation 6 avoided the need to call the victim's mother to authenticate a photograph of her son taken while he was still alive, but there is no question that the photograph in fact depicted the victim or that the State could have called the mother as a witness absent the stipulation.

¶20    Similarly, Holm has not demonstrated that the stipulations prevented him from presenting evidence he otherwise would have offered. For example, he has not suggested that he would have presented evidence that the driver

of the other vehicle was intoxicated but for stipulation 3. Nor does he suggest that the surviving occupants of the other vehicle can remember the crash (stipulation 5), that there were problems concerning the chain of custody with the victim's body (stipulation 7), that the intersection where the crash occurred changed in the time between the accident and the time a photograph of the intersection was taken (stipulation 9), or that the responding emergency medical technician tampered with his minivan's headlight switch (stipulation 10).

¶21 Instead, Holm primarily contends that the alleged error was prejudicial because it limited his "ability to develop an alternative trial strategy" at his second trial. Absent from his brief on appeal, however, is any description of how his trial strategy would have differed had the district court not enforced the stipulations.[5] Holm's burden on appeal includes describing any alternative trial strategy that he would have used but for the court enforcing the stipulations and then describing "how it would have impacted the trial." *See State v. Adams*, 2011 UT App 163, ¶ 23, 257 P.3d 470. Yet he offers no such description. Instead, he makes a conclusory argument that had he "been allowed to develop an alternative trial strategy, . . . there is a reasonable likelihood that there would have been a different

---

5. At oral argument, Holm suggested that but for enforcement of the stipulations, he would have presented testimony from a toxicologist demonstrating that he was not intoxicated at the time of the accident. According to Holm, such testimony would have had a greater impact on the jury than merely reading a stipulation establishing the same fact. But nothing in the stipulations prevented him from calling a toxicologist to testify to that fact. The stipulations precluded evidence that Holm *had* drugs in his system, not evidence that he *did not have* drugs in his system.

result." We decline "the invitation to speculate" about what Holm's alternative trial strategy would have been or what impact it would have had on his second trial. *See State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996). A mere suggestion that a different strategy would have led to a different result "cannot substitute for proof of prejudice." *See id.*

¶22 Accordingly, Holm has not demonstrated that he was prejudiced by the district court's decision to enforce the stipulations, and we reject this argument as a basis for reversal.

## II. Photograph of the Victim's Body

¶23 Holm next argues that the district court abused its discretion under rule 403 of the Utah Rules of Evidence by admitting a "graphic" photograph of the victim's body into evidence. In relevant part, rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." And because district courts "have wide discretion in determining relevance, probative value, and prejudice," "we will not reverse the [district] court's [rule] 403 ruling unless we find it was beyond the limits of reasonableness." *State v. Beverly*, 2018 UT 60, ¶ 56, 435 P.3d 160 (cleaned up).

¶24 As an initial matter, the photograph was relevant to the State's case. The State had to prove that the collision was the cause of the victim's death, and the photograph showed the injured victim in the immediate aftermath of the crash. Further, the photograph helped to illustrate the testimony of an emergency medical technician who responded to the scene and attempted to save the victim's life. But although the photograph passed the "very low bar" required to establish relevance, *see State v. Richardson*, 2013 UT 50, ¶ 24, 308 P.3d 526 (cleaned up), its probative value was minimal because the cause of death was not a contested issue at trial, *cf. State v. Johnson*, 784 P.2d 1135,

1140–41 (Utah 1989) (concluding that the probative value of evidence was "minimal at best" where the facts it tended to prove were established by other evidence and it did not shed light on any contested fact).

¶25 "Still, minimally probative evidence need not always be excluded." *Id.* at 1141. "Rather, it *may* be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." *Id.* (emphases in original) (otherwise cleaned up). Whether the risk of unfair prejudice substantially outweighs the probative value of the evidence typically turns on the nature of the evidence, including the number of photographs, the extent of detail depicted, and the gruesomeness of the injuries. *Compare State v. Dibello*, 780 P.2d 1221, 1230 (Utah 1989) (holding that "the gruesome portion of the videotape"—showing close-up shots of the victim's "stab wounds in her chest, her slit throat, and her beaten face," as well as her blood-covered neck, shoulders, and blouse—"should have been excluded under rule 403"), *State v. Cloud*, 722 P.2d 750, 753–54 (Utah 1986) (holding that the district court abused its discretion by admitting a picture of a murder victim "lying face up in a pool of coagulated blood and three pictures of specific stab wounds to the hands and armpits"), *and State v. White*, 880 P.2d 18, 22 (Utah Ct. App. 1994) (holding that the admission of "blood-soaked" clothing constituted an abuse of discretion under rule 403), *with State v. Kell*, 2002 UT 106, ¶ 39, 61 P.3d 1019 (holding that an autopsy photograph was not admitted in violation of rule 403 where it "contain[ed] no blood stains or gaping wounds"), *State v. Calliham*, 2002 UT 87, ¶ 39, 57 P.3d 220 (holding that photographs of a victim's body—which depicted visible bullet wounds—were "not inherently prejudicial" where the pictures did "not show a great deal of blood" and the body had not "been manipulated in any way to emphasize the wounds"), *State v. Vargas*, 2001 UT 5, ¶ 54, 20 P.3d 271 (holding that autopsy pictures were not admitted in violation of rule 403 where "the wounds depicted in both

photographs had been washed and there was relatively little blood"), *and State v. Cobb*, 774 P.2d 1123, 1125 (Utah 1989) (holding that an autopsy picture taken after the victim's chest had been opened was not admitted in violation of rule 403 where the picture "[wa]s relatively clear of blood").[6]

¶26　Here, the photograph depicted the victim inside a damaged vehicle with probes attached to his bare chest as an emergency medical technician attempted to provide life-saving care. The victim's eyes are closed, his mouth is open, and a small amount of blood can be seen on his lips and nose. There are no visible wounds. Although the image is both unpleasant and saddening, it was "only one" photograph and was "not so graphic that its admission posed an impermissibly high risk of inflaming the jury." *See United States v. Harris*, 886 F.3d 1120, 1129 (11th Cir. 2018). Because the photograph's probative value was not substantially outweighed by a danger of unfair prejudice, the district court did not abuse its discretion by admitting it.

---

6. We recognize that many of these cases employed the since-abandoned gruesome-photograph test, under which a court would consider whether a proffered photograph was gruesome and, if the photograph was deemed gruesome, could admit the photograph only if its "probative value . . . substantially outweigh[ed] the risk of unfair prejudice." *See Met v. State*, 2016 UT 51, ¶ 87, 388 P.3d 447 (cleaned up). Our supreme court repudiated that test in *Met*, explaining that "all relevant photographs, regardless of their alleged gruesomeness, are subject to the balancing test set out in rule 403." *Id.* ¶ 89 (cleaned up). But although the framework under which these cases were decided has since been abandoned, we consider them instructive in illustrating the types of photographs or other evidence which Utah courts believe carry a significant risk of unfair prejudice.

III. Requested Jury Instruction

¶27 Holm next contends that the district court erred by denying his request for a jury instruction defining simple negligence as "fail[ure] to exercise that degree of care which reasonable and prudent persons exercise under like or similar circumstances." He argues that the instruction was necessary because "the entire theory of [his] defense was that he did not act with criminal negligence, but rather acted with simple negligence." Therefore, Holm continues, he "was entitled to have a jury instruction that clearly defined . . . simple negligence . . . in order to present his theory of the case to the jury in 'a clear and understandable way.'" (Quoting *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992).)

¶28 Our supreme court has instructed that

> a criminal defendant is generally entitled to have the charged offense defined for the jury. Similarly, parties are entitled to have their theories of the case submitted to the jury in the court's instructions, provided there is competent evidence to support them. It is the duty of the [district] court to cover the theories and points of law of both parties in its instructions, provided there is competent evidence to support them. However, in determining whether or not the court adequately discharged this duty and fairly presented the issues to the jury, the instructions must be considered as a whole. Furthermore, the [district] court may properly refuse to give requested instructions where it does not accurately reflect the law governing the factual situation of the case.

*Miller v. Department of Transp.*, 2012 UT 54, ¶ 13, 285 P.3d 1208 (cleaned up).

¶29    In this case, Holm was charged with negligent homicide, which required a showing that he acted with criminal negligence. *See* Utah Code Ann. § 76-5-206 (LexisNexis 2017).[7] And although the district court denied Holm's requested instruction defining simple negligence, it did give two jury instructions that distinguished ordinary and criminal negligence from each other. The first, in relevant part, stated,

> A person acts with criminal negligence when he or she should be aware that his or her conduct creates a substantial and unjustifiable risk that a particular result will occur.
>
> The nature and extent of the risk must be of such a magnitude that failing to perceive it is a gross deviation from what an ordinary person would perceive in that situation.

The second provided,

> Conduct is not criminally negligent unless it constitutes a "gross deviation" from the standard of care exercised by an ordinary person. Ordinary negligence, which is the basis for a civil action for damages, is not sufficient to constitute criminal negligence. Mere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so. Criminal negligence must be more than the lack of ordinary care and precaution; it must be something more than mere inadvertence or misadventure.

---

7. Because the relevant statutory provisions we cite have not been materially altered from those in effect at the time of Holm's actions, we cite the current code for convenience.

¶30 Those instructions provided the jury with correct statements of law regarding criminal negligence. *See id.* § 76-2-103(4). And the instructions distinguished between ordinary negligence and criminal negligence, specifying that the latter requires more than "mere inattention," a "mistake in judgment," "inadvertence," or "misadventure." Indeed, the district court in Holm's first trial recognized that the instructions already distinguished between ordinary and criminal negligence and so denied Holm's proposed instruction as "duplicative." The instructions fully allowed the defense to argue its theory that, although Holm was negligent, he was not criminally so.

¶31 Holm was not entitled to a separate instruction on an alternative mens rea that did not apply to the crime charged. Although defendants are entitled to "an accurate instruction upon the basic elements of an offense," *see State v. Pedersen*, 2005 UT App 98, ¶ 4, 110 P.3d 164 (cleaned up), ordinary negligence is not an element of negligent homicide, the crime with which Holm was charged, *see* Utah Code Ann. § 76-5-206. And district courts "need not give jury instructions regarding elements unnecessary for the conviction of the charged crime." *Pedersen*, 2005 UT App 98, ¶ 4.

¶32 The instructions adequately conveyed Holm's theory of the case to the jury, *see Miller*, 2012 UT 54, ¶ 13, and he was not entitled to a mens rea instruction inapplicable to the charged crime. Accordingly, it was not an abuse of discretion for the district court to deny Holm's request for a jury instruction defining simple negligence.

## IV. Directed Verdict

¶33 Lastly, Holm argues that the district court erred when it denied his motion for directed verdict because there was insufficient evidence of criminal negligence. Specifically, he asserts that, although he "may have been negligent," the

evidence is insufficient to establish that his conduct was "a gross deviation from the standard of care."

¶34    In making this argument, Holm primarily relies on *State v. Larsen*, 2000 UT App 106, 999 P.2d 1252. In *Larsen*, the defendant was convicted of negligent homicide after his failure to yield while making a left turn caused a fatal car accident. *Id.* ¶¶ 2–5, 8. The defendant challenged his conviction, claiming "that there was insufficient evidence to show that his conduct was criminally negligent." *Id.* ¶ 15. The State responded that several "facts combine[d] to show that [the] defendant's actions were criminally negligent: he had an open container in his truck; he had illegally consumed alcohol prior to the collision;[8] his truck lights were not on; he failed to activate his turn signal before turning; and he was inattentive in turning when traffic was not clear." *Id.* ¶ 16. We reversed the defendant's negligent homicide conviction after concluding that his "conduct, while apparently negligent, [did] not rise to the level of criminal negligence." *Id.* ¶ 21. In doing so, we noted that the defendant made the turn at a normal rate of speed. *Id.* ¶ 19. We further noted that there was "no nexus between the collision and the presence of alcohol, the absence of headlights, or inactivated turn signal" and, therefore, those facts did "not support the [district] court's determination that [the] defendant was criminally negligent." *Id.* ¶ 20. Accordingly, the evidence in *Larsen* showed that the "defendant simply failed to see an oncoming car which was visible to other drivers as he made a left turn." *Id.* ¶ 21. In other words, it

---

8. The defendant in *Larsen* had a blood alcohol level of .009 percent, well below the legal limit of .08 percent for adults operating motor vehicles at the time. *State v. Larsen*, 2000 UT App 106, ¶ 7, 999 P.2d 1252. But because the defendant was younger than 21 years old, the presence of any alcohol in his system was illegal. *Id.*

represented a case of "mere inattention or mistake in judgment" rather than criminal negligence. *Id.* ¶ 18 (cleaned up).

¶35     The facts of *Larsen* are distinguishable from the present case. Although the defendant in *Larsen* had his headlights turned off, it was dusk at the time of the accident and still light outside. *Id.* ¶ 6. Here, Holm drove with his headlights turned off despite the fact that it was "dark. . . . It was nighttime. It was black." The defendant in *Larsen* turned his car at a normal rate of speed, *id.* ¶ 19, whereas Holm sped through a red light at an already highspeed intersection. Further, there was no suggestion that the defendant in *Larsen* was driving irresponsibly before failing to yield—he stopped at a red light and waited to go until several seconds after the signal turned green. *Id.* ¶ 2. Here, there was testimony that Holm sped down the highway at high rates of speed while swerving in and out of multiple lanes, evincing a significantly more negligent state of mind than the momentary inattention at issue in *Larsen*. *See id.* ¶ 21.

¶36     Those facts are sufficient both to distinguish the present case from *Larsen* and to support the jury's finding that Holm "act[ed] with criminal negligence." *See* Utah Code Ann. § 76-5-206. Accordingly, the district court did not err by denying Holm's motion for directed verdict.


CONCLUSION

¶37     Holm has not demonstrated that he was prejudiced by the district court's decision to enforce stipulations that were entered into by prior counsel in his first trial. He likewise has not demonstrated that the court abused its discretion by admitting a photograph of the victim's body into evidence or by declining to offer Holm's proposed jury instruction defining simple negligence. Finally, the court did not err by denying Holm's

motion for directed verdict because there was sufficient evidence that Holm acted with criminal negligence.

¶38    Affirmed.

_____